# MULCREVY, AND FIDELITY AND DEPOSIT COMPANY *v.* CITY AND COUNTY OF SAN FRANCISCO.

### ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 133.   Argued December 12, 15, 1913.—Decided January 5, 1914.

An act of a State will not be construed in such a manner as to raise questions concerning relations of state officers to the State if such a construction can be avoided.

*Quære,* whether in this case the writ of error should not have run to the lower state court, the higher court having refused to transfer the cause for review; but the Chief Justice of the State having allowed the writ prior to the decision of this court in *Norfolk Turnpike Co.* v. *Virginia,* 225 U. S. 264, it will not be dismissed.

The construction given by the highest court of California to the provisions in the state statute regarding the compensation of county clerks, followed; and *held* that the portion of fees retained under the act of Congress of June 29, 1906, c. 3592, 34 Stat. 596, by a county clerk in naturalization proceedings should be accounted for by him to the county as public moneys.

The fact that a state or county official may also under an act of Congress be an agent of the National Government does not affect his relations with the county and relieve him from accounting for fees received from such Government if his contract requires him to account for all fees received by him even though, so far as the National Government is concerned, he is entitled to retain them in whole or in part for services rendered.

THE facts, which involve the right of a county clerk of San Francisco to retain a portion of the fees received by him for naturalization of aliens as citizens of the United States, are stated in the opinion.

*Mr. James F. Tevlin,* with whom *Mr. Samuel M. Short-ridge* and *Mr. L. A. Redman* were on the brief, for plaintiffs in error.

*Mr. J. F. English,* with whom *Mr. Percy V. Long* was on the brief, for defendant in error.

Mr. Justice McKenna delivered the opinion of the court.

Action brought in the Superior Court of the City and County of San Francisco against plaintiffs in error to recover from them the sum of $2,972, with interest from certain dates, received by plaintiff in error Mulcrevy in his official capacity as county clerk and *ex officio* clerk of the Superior Court of the City and County of San Francisco in certain naturalization proceedings. Judgment was rendered on the pleadings against plaintiffs in error. It was affirmed on appeal.

Mulcrevy was elected county clerk of the City and County of San Francisco at the November election, 1905, for the term of two years commencing on January 8, 1906. He duly filed his official bond with plaintiff in error, the Fidelity and Deposit Company of Maryland, his surety, which was conditioned that he should faithfully perform all official duties which were then or thereafter might be imposed upon him by law, ordinances, or the charter of the City and County. His salary was fixed by the charter at the sum of $4,000 and it was provided as follows: "The salaries provided in this charter shall be in full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the City and County of San Francisco within twenty-four hours after the receipt of the same."

By his election Mulcrevy became *ex officio* the clerk of the Superior Court. After he had entered upon the discharge of his duties, on June 29, 1906, Congress passed an act, c. 3592, 34 Stat. 596, entitled "An Act to establish a Bureau of Immigration and Naturalization, and to provide for a uniform rule for the naturalization of aliens throughout the United States." Jurisdiction in naturalization proceedings was conferred by the act on the Fed-

eral courts and certain state courts, and the duties of the clerks were set forth. Fees were prescribed, and it was provided that the clerks of the courts collecting them were authorized to retain one-half thereof, the other half to be accounted for in their quarterly accounts which they were required to make to the Bureau of Immigration and Naturalization. The amount retained by the clerk, however, it was provided should not exceed in any one fiscal year the sum of $3,000. If fees in excess of $6,000 be collected in any one year the clerk might be allowed by the Secretary of Commerce and Labor additional compensation for additional clerical assistance out of the moneys received by the United States.[1]

Under the provisions of the act as clerk of the Superior Court in naturalization proceedings, Mulcrevy collected

[1] "SEC. 13. . . . The clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceeding; the remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts, which they are hereby required to render the Bureau of Immigration and Naturalization, . . .

"Provided, That the clerks of courts exercising jurisdiction in naturalization proceedings shall be permitted to retain one-half of the fees in any fiscal year up to the sum of three thousand dollars, and that all fees received by such clerks in naturalization proceedings in excess of such amount shall be accounted for and paid over to said Bureau as in case of other fees to which the United States may be entitled under the provisions of this Act. The clerks of the various courts exercising jurisdiction in naturalization proceedings shall pay all additional clerical force that may be required in performing the duties imposed by this Act upon the clerks of courts from fees received by such clerks in naturalization proceedings. And in case the clerk of any court collects fees in excess of the sum of six thousand dollars in any one year, the Secretary of Commerce and Labor may allow to such clerk from the money which the United States shall receive additional compensation for the employment of additional clerical assistance, but for no other purpose, if in the opinion of the said Secretary the business of such clerk warrants such allowance." 34 Stat. 600.

$5,944 and accounted for one-half thereof as required by
the act. The other half he kept for himself, his contention
being that it was intended for himself by the act of Con-
gress as pay for his extra work and clerical assistance, the
fees not having been received by him in his official capac-
ity but merely as an agent designated by the act of Con-
gress to perform services in naturalization proceedings.

It appears from the opinion of the District Court of
Appeal that the total salary list fixed and allowed to Mul-
crevy's office amounts to $58,600.00. And it is provided
by the charter that when an officer shall require additional
deputies, clerks or employés the same may be allowed by
supervisors if upon investigation the Mayor determines
the same to be necessary.

A question of jurisdiction is raised. From the judgment
of the Superior Court the case was taken by appeal to the
Supreme Court of the State, and properly taken, the lat-
ter court having jurisdiction, the amount involved being
over $2,000. The Supreme Court, exercising the power
given to it by the constitution of the State, ordered the
cause to be heard by the District Court of Appeal of the
First Appellate District of the State. The record was
accordingly transmitted to the latter court, three printed
copies, however, being retained in the Supreme Court.
Upon the rendition of the judgment of the District Court
of Appeal affirming the judgment of the Superior Court,
a petition was filed in the Supreme Court for transfer
of the cause to it. The petition was denied as follows:

"By the Court: The petition to have the above entitled
cause heard and determined by this Court after Judg-
ment in the District Court of Appeal for the First Appel-
late District is denied.

                                    "BEATTY, C. J."

A petition for writ of error was then presented to the
Chief Justice of the Supreme Court which recited that
that court was the highest court of the State in which a

decision of the cause could be had. The writ was allowed by the Chief Justice. A question was raised at the time as to which court the writ should run and it seemed to be the opinion of the Chief Justice, as it was of counsel, that by the petition for transfer of the cause from the District Court of Appeal to the Supreme Court the order of the latter court made the judgment final in that court. Though both counsel concur in this view, its correctness may be doubted. However, as this writ of error was allowed before the October term, 1912, of this court, the case is brought within *Norfolk Turnpike Co.* v. *Virginia,* 225 U. S. 264. In that case, under like circumstances, we did not dismiss the writ on our own motion but entertained jurisdiction.

On the merits the case presents no difficulty. It involves only the construction of the act of Congress already referred to above. We accept the state court's construction of the charter of the City and County of San Francisco. Indeed, its clearness leaves no room for construction. The salary it provides is declared to be "in full compensation for all services rendered." And it is provided that "every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county." The provisions are complete and comprehensive and express Mulcrevy's contract with the city, the performance of which his office imposed upon him; and, of course, the fees received by him in naturalization proceedings, because he was clerk of the Superior Court, were in compensation for official acts, not personal acts.

But it is contended by plaintiffs in error that the fees having been received officially is not of importance, that nevertheless he acted as the representative of the United States in execution of the policies of the United States and being by the act of Congress invested with his powers he is entitled for himself to the compensation prescribed

by the act for their execution, without any liability to account for them to the city. The last proposition, however, does not follow from the others, and the others are but confusing. If it be granted that he was made an agent of the National Government, his relations to the city were not thereby changed. He was still its officer, receiving fees because he was—not earning them otherwise or receiving them otherwise, but under compact with the city to pay them into the city treasury within twenty-four hours after their receipt.

Under the contention of plaintiffs in error a rather curious situation is presented. Mulcrevy was elected to an office constituted by the municipality under the authority of the State. He was given a fixed salary of $4,000 with the express limitation that it should be his complete compensation. He agreed that all other moneys received by him officially should be paid into the treasury of the city. He was given office accommodations, clerks to assist him, and yet contends that notwithstanding such equipment and assistance, notwithstanding his compact, he may retain part of the revenues of his office as fees for his own personal use. We cannot yield to the contention. Nor do we think the act of Congress compels it. The act does not purport to deal with the relations of a state officer with the State. To so construe it might raise serious questions of power, and such questions are always to be avoided. We do not have to go to such lengths. The act is entirely satisfied without putting the officers of a State in antagonism to the laws of the State—the laws which give them their official status. It is easily construed and its purpose entirely accomplished by requiring an accounting of one-half of the fees to the United States, leaving the other half to whatever disposition may be provided by the state law. Counsel cite some state decisions which have construed the act of Congress as giving a special agency to the clerks of the state courts and as receiving

their powers and rights from the national enactment. The reports of the Department of Commerce and Labor are quoted from, which, it is contended, exhibit by their statistics and recommendations the necessity of national control. State decisions expressing a contrary view are frankly cited. This contrariety of opinion we need not further exhibit by a review of the cases. We have expressed our construction of the act, and it is entirely consonant with the purpose of the act and national control over naturalization.

*Judgment affirmed.*