nothing as to them. The fraudulent conduct of the defendants in that case which prevented competition in bidding entitled the plaintiff to have the sale set aside on that ground alone, and the stipulation of the parties required the court, in place of setting aside the sale, to render the money judgment which it did. The judgment was affirmed here because there was no error in it which prejudiced the defendants in that case.

Thus, again, plaintiff has elected to take the benefit of the services of the referee in making that sale and the attorney who foreclosed the mortgage. He has not only ratified the sale, but has recovered, on account thereof, over $1,200. We see no reason in equity and good conscience why plaintiff should have the benefit of this foreclosure sale liquidating the asset for the estate he represents without the usual and ordinary expense thereof. Hence, as it seems to us, if these attorneys should be disciplined for misconduct, such discipline should not be administered for the purpose of paying money to the plaintiff to which the plaintiff would not otherwise be entitled.

Our conclusion is that the judgment appealed from should be reversed, with costs, and the plaintiff's complaint dismissed, with costs. All concur.

(163 App. Div. 437)

### PRICE v. ERIE COUNTY et al.    (No. 270-72.)

(Supreme Court, Appellate Division, Fourth Department.    July 7, 1914.)

CLERKS OF COURTS (§ 35*)—COUNTY CLERK—COMPENSATION—FEES IN NATURALIZATION CASES.

    Under Act Cong. June 29, 1906, c. 3592, 34 Stat. 600 (U. S. Comp. St. Supp. 1911, p. 535), requiring the clerk of each court exercising jurisdiction in naturalization cases to collect certain fees and authorizing him to retain one-half of such fees, accounting for the other one-half to the Bureau of Immigration and Naturalization, and providing that any necessary expenses by way of clerk hire must be borne by the clerk, except where he is allowed additional compensation, where the fees exceed $6,000 a year, and under section 2 of Laws New York 1885, c. 502, making the office of the county clerk of Erie county a salaried office, which provides that the salary fixed shall constitute the whole compensation for official services performed for the state, the county, and for individuals; or which he shall be required or authorized by law to perform by virtue of his office, and section 3 as amended by Laws N. Y. 1891, c. 149, requiring such clerk to collect all fees, etc., "now permitted by law" and not exceeding the amounts "now fixed by law" and requiring him to exact payment for all services rendered by virtue of any law of the state or by order of the board of supervisors, the portion of the fees retained by such clerk acting as clerk of the Supreme Court in naturalization cases belongs to him and not to the county, since assuming that the Legislature might have required him to turn over to the county any income received from any source public or private, other than the salary provided, the statute only intends that the county shall receive fees payable under the statutes of the state, and does not contemplate receipts from a source not then in existence over which the state had no control and which came by virtue of the enactment of a superior lawmaking body.

    [Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 62; Dec. Dig. § 35.*]

    Kruse, P. J., dissenting.

---

*For other cases see same topic & §-NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Equity Term, Erie County.

Action by John H. Price against the County of Erie and another. From a judgment for plaintiff, formerly County Clerk of Erie County, determining that he was entitled to one-half of the fees collected from applicants for naturalization and directing the County Treasurer of Erie County to draw warrants to pay to plaintiff such fees amounting to $4,288, defendants appeal.   Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Carleton H. White, of Buffalo (Adelbert Moot, of Buffalo, of counsel), for appellants.

Simon Fleischmann, of Buffalo, for respondent.

MERRELL, J.   The plaintiff-respondent for 12 years, from January 1, 1901, to January 1, 1913, was the duly elected, qualified, and acting county clerk of the county of Erie, and as such, during all of said period, served as clerk of the Supreme Court of the State of New York held in and for said county and of the County Court of said county.   By federal statute enacted in 1906, said plaintiff, as such clerk of said courts, was authorized to attend to the naturalization of aliens, applicants for citizenship, in proceedings heard in said courts, and by said statute said clerk was authorized to collect of said applicants for citizenship certain prescribed fees, and to retain one-half of such fees so collected by him, and was required to account and pay over to the Bureau of Immigration and Naturalization at stated intervals the remaining one-half of said fees.   After said statute became operative and during the remainder of his incumbency, plaintiff collected such fees in the aggregate amount of $8,576, and for the one-half of such fees payable to the Bureau of Immigration and Naturalization the plaintiff duly accounted and discharged the same.   The one-half thereof which, by said federal statute the clerk was entitled to retain, was by him paid to the county treasurer of Erie county pending a judicial determination as to whether the plaintiff was entitled to such half or whether the same should go to the county of Erie; the uncertainty as to said half arising from a provision of a special act of the Legislature of New York state antedating by several years the federal statute above mentioned, making the office of county clerk of Erie county a salaried one and providing that all fees, emoluments, and perquisites which said clerk should charge or receive, or to which he was legally authorized, required, or entitled to charge or receive, should belong to the county of Erie.   More particular attention to said statute will be hereafter called.   This action is brought to determine the ownership of said fees now in the custody of said county treasurer, and to require such official action as will restore the same to plaintiff.

The contention of appellants that the payment of the disputed fees to the county treasurer was under a mistake of law only, and that for that reason plaintiff is precluded from recovering back such fees, I think is without merit.   The resolution adopted by the supervisors of Erie county clearly showed an intention to procure a judicial determination as to the ownership of such fees, and clearly manifested

148 N.Y.S.—55

an intention to waive any claim thereto based upon mere payment to such treasurer.

The federal statute above referred to was enacted by Congress June 29, 1906, and with the approval of the President of the United States became operative on said date. Act June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1911, p. 528). With reference to the question before us, said statute (section 13) provides:

"That the clerk of each and every court exercising jurisdiction in naturalization cases shall charge, collect, and account for the following fees in such proceeding."

After specifying the fees to be collected, the act further provides as follows:

"The clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceedings; the remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts, which they are hereby required to render to the Bureau of Immigration and Naturalization, and pay over to such bureau, within thirty days from the close of each quarter in each and every fiscal year," etc.

However, the amount which said clerks are allowed to retain shall not exceed $3,000 in any fiscal year. Whatever expense by way of clerk hire required to transact the business of naturalization must, by the law, be borne by the clerk and paid from his half of the fees so retained by him. The Secretary of Commerce and Labor may allow any clerk from the amount paid to said department by him additional compensation for the employment of additional clerical assistance where the fees collected by the clerk exceed $6,000 in any one year.

It would seem to me beyond question that Congress intended by the enactment of said law and the provisions in reference to the retention of one-half of the fees collected by the several county clerks that the same should go to them in payment of extra expenses, clerk hire, etc., and to compensate them for the extra labor put upon them by the act.

But it is contended by the appellants that the plaintiff-respondent is not entitled to retain said fees by reason of the provisions of a special act of the New York State Legislature, passed in 1885, making the office of county clerk of Erie county a salaried one, and requiring the county clerk of said county to pay into the county treasury any fees collected or received by him. Appellants contend that the fees received by the plaintiff-respondent in these naturalization matters were within the purview of said special state law, and that therefore the plaintiff has no claim or title thereto.

The special act of the Legislature making the county clerk's office of Erie county a salaried one constituted chapter 502 of the Laws of 1885. So far as applicable to the questions before us, said act first provided for the compensation of the county clerk of said county for his services an annual salary of $5,000 per annum. By section 2 of said special act the Legislature provided:

"The salary so fixed shall constitute the whole compensation which shall be allowed or paid to or received by said county clerk for all official services performed by him for the state, for the county and for individuals, or which

he shall be required or authorized by law to perform by virtue of his office as such clerk. It shall be the duty of said clerk to perform all services which he is or shall be required or authorized by law to perform by virtue of or by reason of his holding such office, including his duties as clerk of every court of which he is or shall be clerk, and no compensation, payment or allowance shall be made to him for his own use for any such services, except the salary aforesaid."

Section 3 of the law as originally enacted was amended by chapter 149 of the Laws of 1891, and as so amended was in force during all the times pertinent to our inquiry. Said section reads as follows:

"All the fees, emoluments and perquisites which such clerk shall charge or receive, or to which he is legally authorized, required or entitled to charge or receive shall belong to the county of Erie. It shall be his duty to exact, collect and receive all such fees, emoluments and perquisites now permitted by law, and not exceeding amounts now fixed by law, as from time to time shall be prescribed by resolution of the board of supervisors of said county at any special or annual session thereof, except that the charge for filing, entering or recording judgments, decrees, orders, deeds and mortgages shall be and remain the same as provided by statute, provided, however, that any resolution thus passed by said board of supervisors shall be general in its character establishing a uniform rate of charges.  *  *  *  Said clerk shall require payment in advance for recording all papers left with him for record, and shall also in each case require payment for all other services rendered by him or his assistants in his or their official capacity by virtue of any law of this state or by order of the board of supervisors of said county."

Section 4 requires the clerk to keep books of account "of all official services performed by him or his assistants, and of all fees, perquisites and emoluments received or chargeable by him or them, pursuant to law."

Section 5 requires the clerk to transmit monthly statements to the treasurer of the county of all moneys received by him for these "perquisites and emoluments for all services rendered by him or them in his or their official capacity," and to specify the different services for which such fees have been received.

Section 6 requires the clerk, at the time of rendering each monthly statement, to pay to the treasurer of the county, for the benefit of the county, the moneys received by him since making the preceding statement.

It will thus be seen that by section 2 the salary fixed was to be compensation for official services performed for the state, for the county and for individuals, or which he was required or authorized by law to perform by virtue of his office as such clerk. And by section 3 the clerk was required to exact, collect, and receive all fees, emoluments, and perquisites now permitted by law, and not exceeding amounts now fixed by law. Section 3 finally required him to collect all fees for recording papers in advance, and that in each case he should require payment for all other services rendered by him or his assistants in his or their official capacity by virtue of any law of this state or by order of the board of supervisors of said county. In enacting this statute it would seem impossible that the Legislature could have contemplated or intended to cover the fees claimed by the respondent in this action.

While courts of record in the state are invested with jurisdiction to hear naturalization matters under federal statutes, concurrently with

federal courts, I have grave doubts as to whether a county clerk, an official of a subdivision of the state, elected and exercising his official duties by virtue of a state law, could be compelled to serve in naturalization matters against his will and without compensation. The federal law seems to contemplate, and experience teaches us, that a vast amount of labor and considerable expense must be incurred by county clerks in discharging the duties put upon them by the federal Naturalization Law, and it is unreasonable that they should be asked to incur this expense and extra labor without some compensation. In serving in naturalization matters a clerk is discharging no duty put upon him by any statute of the state of New York.

The salary granted him by the special act above referred to was intended as compensation for the performance of his duties as county clerk and such duties as the Legislature prescribed he should perform. It seems unreasonable that the Legislature, in providing the salary for the county clerk of Erie county, intended to compensate him for other labors than those put upon him by state law. As well might it be said that the Legislature intended such salary as compensation for the clerk's labor in any private enterprise in which he might engage while holding office. Clearly the salary was provided for compensation for clerical duties performed under statutes enacted by the Legislature of the state, and cannot be extended to cover duties put upon him by the federal statute, nor could the Legislature direct the turning over of moneys to his county which he had received from sources over which it had no control or jurisdiction. Prior to June, 1906, these fees from naturalization matters were unknown. The law fixing the salary of the Erie county clerk and providing for payment of all fees into the county treasury was enacted many years prior to the federal law which gave birth to the fees in these naturalization matters. The collection of such fees could not have been contemplated by the Legislature when the special state act was passed. It had no intimation that any such fees would ever be forthcoming, and unquestionably the Legislature did not intend to provide for payment thereof to the county. The question is one of legislative intent, and I do not believe the Legislature in enacting the law making the county clerk's office of Erie county a salaried one in any manner contemplated the payment of fees for duties performed by the clerk under the federal statute. By a far stretch, it may possibly have been within the power of the Legislature to fix the compensation of the county clerk of Erie county in such manner that any income which he might receive from any source, public or private, other than the salary provided, should be turned over to the county, and, if the clerk saw fit to accept the office under those terms, perhaps he would be bound to turn back to the county all his receipts from every source, public or private; but such was not the intent of the Legislature in enacting the statute in question. It intended that the county should receive all fees payable to the county clerk in the first instance under the statutes of the state, and cannot be said to have contemplated receipts from a source not then in existence and over which it had not the slightest control, and which came by virtue of enactment of another and superior lawmaking body.

It seems to me, therefore, that the plaintiff-respondent is entitled to the fees in controversy here, and which were awarded to him by the decree of the court at equity term.

The decree appealed from should be affirmed, with costs.

All concur, except KRUSE, P. J., who dissents.

KRUSE, P. J. (dissenting). The act of Congress relating to naturalization confers exclusive jurisdiction upon certain federal and state courts to naturalize aliens as citizens, and fixes the fees in such proceedings. It directs the clerk of each of the courts to collect the fees and authorizes him to retain one-half thereof up to a certain amount and requires the payment of the remainder to the Bureau of Immigration and Naturalization. Chapter 3592 of the Statutes at Large, approved June 29, 1906.

The plaintiff, while county clerk of Erie county and ex officio clerk of the Supreme Court, which is one of the courts within the provisions of the act of Congress for naturalizing aliens, collected such fees in the aggregate amount of $8,576. He remitted one-half thereof as provided by the federal act. The question here is whether the other one-half belongs to him or the county of Erie.

Before the act of Congress was passed, and while our statutes relating to naturalization were in force, and in 1885, a special act was passed by the Legislature of this state, making the office of county clerk of Erie county a salaried office. The salary was fixed at $5,000 per annum, and it was provided that it should not be increased or diminished during the term of office for which any clerk should be elected, and should constitute the whole compensation which should be allowed or paid to or received by the clerk for all official services performed by him for the state, for the county, and for individuals, or which he should be required or authorized by law to perform by virtue of his office as such clerk. It required him to perform all services which by law he was authorized or required to perform by virtue of or by reason of his holding such office, including his duties as clerk of every court of which he should be clerk, and it was expressly provided that no compensation, payment, or allowance should be made to him for his own use for any of such services except the salary stated. All the fees, emoluments, and perquisites which the clerk should charge or receive or be entitled or required to charge or receive should belong to the county of Erie. The act made it his duty to collect the same and account therefor, making a monthly statement thereof, and pay the same to the treasurer of the county. While the county clerk was authorized to appoint the assistants to be employed in his office, the board of supervisors of the county was authorized to designate the number and fix their salaries, except that of the deputy clerk and special deputy clerks, which was fixed in the act. Laws of 1885, c. 502.

It seems clear that the Legislature intended that the clerk should not retain as his own any of the fees received by him for official services, but that the same should belong to the county. It is equally clear, as

it seems to me, that the services which he rendered in the performance of his duties under the federal Naturalization Act were performed by virtue of his office as clerk, and by reason of the holding of the same; and, if so, I think the fees therefor belong to the county. People ex rel. Whittemore v. Seabury, 23 How. Prac. 121; Mulcrevy v. City and County of San Francisco, 231 U. S. 669, 34 Sup. Ct. 260, 58 L. Ed. 425; Barron County v. Beckwith, 142 Wis. 519, 124 N. W. 1030, · 30 L. R. A. (N. S.) 810, 135 Am. St. Rep. 1079. It was incumbent upon the board of supervisors of the county to provide a sufficient number of assistants to enable the clerk to properly do his work, including that arising under the federal Naturalization Act. I assume that was done, but, whether it was or not, I think the fees belong to the county, except such part as goes to the federal government. The work was done by the clerk and his assistants, all of whose salary was paid by the county. I think the services which the clerk rendered are within the provisions of the act fixing his salary, and that the act of Congress does not affect the amount of the compensation of the clerk or the provisions in the state statute requiring the clerk to pay over the fees to the treasurer of the county.

If I am right, it follows that the judgment should be reversed and the complaint dismissed.