INHABITANTS OF THE COUNTY OF BERKSHIRE *vs.* FRANK H. CANDE.

Berkshire.   September 14, 1915. — October 14, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Clerks of Courts. Naturalization. Statute,* Validity. *Constitutional Law.*

The decision of the Supreme Court of the United States in *Mulcrevy* v. *San Francisco,* 231 U. S. 669, in regard to the construction of 34 U. S. Sts. at Large, c. 3592, holding that the half of naturalization fees which is retained by the clerks of courts of counties of a State under that statute is subject to disposition by the State Legislature, is binding upon this court, and overrules the

---

decision of this court to the contrary contained in *County of Hampden* v. *Morris*, 207 Mass. 167.

St. 1908, c. 253, which was passed two years after 34 U. S. Sts. at Large, c. 3592, took effect, although by its literal terms it purports to dispose of all the fees received by the clerks of the courts of the several counties in naturalization cases, must be construed to apply only to the half of those fees which under 34 U. S. Sts. at Large, c. 3592, is subject to disposition by the Legislature, and, so construed, is a valid provision directing that the one half of the fees in naturalization cases, which the clerks of courts are entitled by the statute of the United States to retain for themselves, they shall pay over to the treasurers of the respective counties, retaining only such part of the money received by them under the naturalization laws as they actually have expended "for clerical assistance, travel and other expenses, while acting under said laws."

It is a well settled rule in the construction of statutes that, where a statute is capable of receiving a reasonable interpretation that will bring it within the power of the Legislature, such interpretation will be adopted instead of one that would make it unconstitutional and void.

RUGG, C. J. This is an action to recover naturalization fees which have come into the hands of the defendant as clerk of courts of the county of Berkshire under the Act of Congress of June 29, 1906, 34 U. S. Sts. at Large, c. 3592.

The same point is presented as arose in *County of Hampden* v. *Morris*, 207 Mass. 167. It there was held that by the terms of St. 1908, c. 253, all the fees received by the clerks for naturalization must be turned over to the county treasurer, except certain sums expended for clerical assistance, and that the statute was "in conflict with the federal law, and . . . must yield to it." This was on the ground that Congress has power, having jurisdiction of the subject of naturalization, to fix the amount of fees to be collected in connection with the administration of naturalization laws and to make such disposition of those fees as its wisdom may dictate. The meaning of the act of Congress was held to be that "the clerks of the courts are required to account to the Bureau of Immigration and Naturalization for one half of the fees collected by them, and to pay them over to the disbursing clerk of the Department of Commerce and Labor; and the other half the clerks may retain for themselves, first paying from these fees all additional clerical force that may be required in performing the duties imposed by the act. . . . Congress well might require a part of them [the fees] to be paid into the treasury of the United States, where they would be available for the payment of a part of the expenses of maintaining the bureau. It cannot

reasonably be contended that a State can take these fees away from the government of the United States. Congress well might think that the elaborate proceedings required by the statute impose such duties upon clerks of the courts that the interests of the public will be promoted by giving them special compensation to be taken from the fees. As this is the policy of the law under which the court is acting, the Legislature cannot nullify the statute by enacting that the clerk shall pay all the money to the county treasurer."

Since the decision of *County of Hampden* v. *Morris*, 207 Mass. 167, the Supreme Court of the United States has interpreted the act of Congress governing this subject. Its construction of an act of Congress is final and must be accepted by all State courts. In *Mulcrevy* v. *San Francisco*, 231 U. S. 669, 674, it was said respecting this congressional statute: "The act does not purport to deal with the relations of a State officer with the State. To so construe it might raise serious questions of power, and such questions are always to be avoided. We do not have to go to such lengths. The act is entirely satisfied without putting the officers of a State in antagonism to the laws of the State — the laws which give them their official status. It is easily construed and its purpose entirely accomplished by requiring an accounting of one half of the fees to the United States, leaving the other half to whatever disposition may be provided by the State law." This construction of the act of Congress controls and to some extent overrules what was said in *County of Hampden* v. *Morris*.

The question recurs, therefore, what is the meaning of our statute in the light of the decision of the Supreme Court of the United States in *Mulcrevy* v. *San Francisco?* Our statute (the material parts of which are in a footnote *) is comprehensive in

---

* R. L. c. 165, § 31, as amended by St. 1908, c. 253, entitled "An Act relative to the disposition of moneys received in naturalization cases" is as follows: "The clerks in the courts of the several counties . . . shall keep accounts of all fees received by them for their official acts and services, including . . . fees and money in proceedings relative to naturalization . . . and shall on or before the tenth day of each month pay over to the treasurer of the county . . . all fees received during the preceding calendar month . . .: provided, however, that the said clerks may retain that part of any moneys received by them under or by authority of the naturalization laws of the United States which they shall certify under oath to the

its terms. Read literally there is included in its mandate for the payment of naturalization fees to the county treasurer all such fees received by the clerks, both the part required by the act of Congress to be paid to the United States and the part to be retained by the clerks. Manifestly the Legislature cannot dispose of the part to be paid to the United States. But in *Mulcrevy* v. *San Francisco* the Supreme Court of the United States has held that the Legislature may dispose of the part to be retained by the clerks. It was decided in *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, at page 241, the court speaking through Chief Justice Knowlton: "It is a rule of law that a statute which would be unconstitutional as applied to a certain class of cases, and is constitutional as applied to another class, may be held to have been intended to apply only to the latter class, if this seems in harmony with the general purpose of the Legislature. As was said by Mr. Justice Devens in *Commonwealth* v. *Gagne,* 153 Mass. 205, 206, 207: 'Indeed, where two governments, like those of the United States and the Commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which as to certain subjects is subordinate should be construed with reference to the powers and authority of the superior government, and not be deemed as invading them unless such construction is absolutely demanded.' " *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 575.

It is also a well settled principle of constitutional law in the interpretation of statutes, that one part of a statute may be contrary to the Constitution while the rest may stand as valid. Said Chief Justice Shaw in *Warren* v. *Mayor & Aldermen of Charlestown,* 2 Gray, 84, at pages 98, 99: "It is no doubt true . . . the same act of legislation may be unconstitutional in some of its provisions, and yet constitutional in others. . . . Such act has all the forms of law, and has been passed and sanctioned by the duly constituted legislative department of the government; and if any part is unconstitutional, it is because it is not within the scope of legitimate legislative authority to pass it. Yet other parts of the same act may not be obnoxious to the same objec-

---

treasurers of their respective counties have actually been expended by them for clerical assistance, travel and other expenses, while acting under said laws."

tion, and therefore have the full force of law, in the same manner as if these several enactments had been made by different statutes. But this must be taken with this limitation, that the parts, so held respectively constitutional and unconstitutional, must be wholly independent of each other.  But if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them." *Edwards* v. *Bruorton*, 184 Mass. 529.  *Commonwealth* v. *Petranich*, 183 Mass. 217.  *Commonwealth* v. *Anselwich*, 186 Mass. 376, 379.  *Mutual Loan Co.* v. *Martell*, 200 Mass. 482, 487.  *Hawley* v. *Malden*, 204 Mass. 138, 141.

Guided by these principles of statutory interpretation and by the controlling decision of *Mulcrevy* v. *San Francisco*, 231 U. S. 669, 674, there seems no escape from the conclusion that by St. 1908, c. 253, the Legislature intended to regulate the disposition of all fees received by the clerks of courts from proceedings relative to naturalization which it lawfully might regulate.  That is the dominant purpose of the act, manifest from its title and substantive words.  It was enacted almost two years after the act of Congress relating to naturalization.  The only fees as to naturalization proceedings which could be received by the clerks of courts were those established by the act of Congress.  The only part of those fees over which the Legislature could exercise control were those submitted to its jurisdiction by the act of Congress.  Although our statute by its terms has been held to comprehend all fees, including the half required to be paid to the United States, yet this too extensive scope does not appear to be so inextricably blended with the portion over which the Legislature, under *Mulcrevy* v. *San Francisco*, has power of disposition as to invalidate the whole statute and render it inoperative as to subjects within the domain of the Legislature.  The St. 1908, c. 253, when read in conjunction with R. L. c. 165, § 37, which enacts that "The annual salaries of clerks [of courts] shall be in full compensation for all services rendered by them in the civil or criminal courts,

to the county commissioners, in making any returns required by law or in the performance of any other official duty" (with exceptions not here material), discloses an intention simply to make effective provision for the payment into the county treasury of moneys derived from naturalization fees which otherwise and but for such statute the clerks would retain for their personal use. This interpretation is in harmony with the general trend of legislation as to the disposition of fees received by public officers, which is to make the salaries the sole compensation and to require all fees to be turned over to some treasury representing the general public. See *Boston* v. *Epple,* 221 Mass. 395.

It cannot be assumed that St. 1908, c. 253, was intended to apply to naturalization as treated in R. L. 166, §§ 14 to 18. Those sections were enacted when naturalization fees were under the control of the State Legislature and became suspended when the Congress acted within its jurisdiction touching the same subject.

It is urged by the defendant that under the doctrine of *stare decisis* the decision of *County of Hampden* v. *Morris* should stand. That doctrine is fully recognized and followed by this court in appropriate instances. *Mabardy* v. *McHugh,* 202 Mass. 148. Our former decision now is modified only to the extent that it is contrary to *Mulcrevy* v. *San Francisco,* 231 U. S. 669. A yielding of assent to the controlling decisions of the Supreme Court of the United States as to matters within its field of supremacy constitues no infringement of the rule of *stare decisis.*

It is of no consequence in this connection whether the clerks of courts in performing duties touching naturalization are agents for the national government. However they may act, the decision in *Mulcrevy* v. *San Francisco* is that the fees here in question may be disposed of by the State legislatures. Nor is it material that, in the absence of State legislation to the contrary, the clerks might retain the fees. It has been held in the decisions of several State courts that State statutes as to the fees of clerks of courts did not govern the disposition of naturalization fees like those here in question.* Whatever may be said as to the interpretation of the

* *Eldredge* v. *Salt Lake County,* 37 Utah, 188. *Freeholders of Passaic* v. *Slater,* 55 Vroom, 589. *Fields* v. *Multnomah County,* 64 Ore. 117. *In re Beyer,* 130 N. Y. Supp. 281. *State* v. *Quill,* 53 Ind. App. 495. *Price* v. *County*

State statutes enacted before the act of Congress went into effect under which these fees were received, it seems necessary to hold that our statute, passed since the act of Congress, was intended to and, under the decision of *Mulcrevy* v. *San Francisco,* does control the disposition of these fees. As was said in *United States* v. *Van Duzee,* 185 U. S. 278, 281, quoting from *United States* v. *Shields,* 153 U. S. 88, 91, "Fees allowed to public officers are matters of strict law, depending upon the very provisions of the statute. They are not open to equitable construction by the courts, nor to any discretionary action on the part of the officers."

In accordance with the terms of the report,* judgment is to be entered for the plaintiff in the sum of $163.80.

*So ordered.*

The case was submitted on briefs.

*C. P. Niles,* District Attorney, *& F. M. Myers,* for the plaintiff.

*J. F. Noxon & M. L. Eisner,* for the defendant.

---

of *Erie,* 163 App. Div. (N. Y.) 437.   But see *contra, Barron County* v. *Beckwith,* 142 Wis. 519; *Franklin County v. Barnes,* 68 Wash. 488.

* Made by *Irwin,* J., by consent of the parties upon an agreed statement of facts.   He found for the defendant and reported the case for determination by this court.