**STATE OF INDIANA ex rel. UNITED STATES v. KILLIGREW et al.**

**No. 7363.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 12, 1941.

James R. Fleming, U. S. Atty., and Alexander M. Campbell, Asst. U. S. Atty., both of Fort Wayne, Ind., Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., Francis M. Shea, Asst. Atty. Gen., and A. B. Holman, of Washington, D. C., for appellant.

Ora L. Wildermuth and Russell H. Nehrig, both of Gary, Ind., for appellee.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered December 20, 1939, dismissing the complaint in an action brought in the name of the State of Indiana upon the relation of the United States against Alvina M. Killigrew, as principal, and United States Fidelity & Guaranty Company, as surety, to recover the unpaid balance of fees collected by the defendant Killigrew, Clerk of the Lake Circuit Court, Lake County, Indiana, and ex officio Clerk of the Lake Superior Court in naturalization proceedings.

The facts, as alleged in the complaint, are summarized as follows: On December 3, 1928, the defendant Killigrew was appointed Clerk of the Lake Circuit Court, Lake County, Indiana, and served from the date of such appointment to January 4, 1932, pursuant to the provisions of the Act of February 4, 1927. Burns' 1933, § 4-1111. She became, by virtue of her appointment, ex officio Clerk of the Lake Superior Court. On January 7, 1929, there was filed with the Recorder of Lake County, Indiana, a

bond in the penal sum of $150,000, executed on December 3, 1929, by Killigrew as principal, and United States Fidelity and Guaranty Company as surety. The bond, after reciting the circumstances of her appointment as Clerk in and for said Circuit Court of Lake County, Indiana, was conditioned as follows: "Now if the said Alvina M. Killigrew shall well, truly, faithfully and impartially discharge the duties of his said office, and pay over, according to law, all moneys that may, by virtue of his said office, come into his hands, then this bond shall be null and void, otherwise to remain in full force and effect in law."[1]

During the relevant period, the Lake Circuit Court and the Lake Superior Court exercised jurisdiction to naturalize aliens as citizens of the United States. As Clerk of the Circuit Court and ex officio Clerk of the Superior Court, the defendant Killigrew, from July 1, 1929, to December 1, 1932, charged and collected fees in naturalization proceedings in the amount of $20,069. Of this, all but $15 was collected in the Superior Court. Of the fees thus collected, the defendant Killigrew accounted for and paid over to the United States the sum of $10,102.50. The complaint alleged that pursuant to the Act of June 29, 1906, as amended, 8 U.S.C.A. § 402, she was entitled to retain as her compensation for that period the sum of $7500, leaving a balance due the United States of $2457.50, to recover which, the instant action was instituted. As stated, the District Court sustained demurrers to the complaint and rendered judgment for the defendants.

The District Court, in an opinion which appears in the record, expressed the view that there could be no recovery for the fees collected as ex officio Clerk of the Superior Court for the reason that the bond covering the duties of the Clerk of the Circuit Court did not extend to, and include, the duties of the Clerk of the Superior Court. The view was further expressed that there was no liability to the United States because the Clerk "is only bound under her bond to turn over all fees enumerated in the duties of the Clerk of the Circuit Court as provided by the State of Indiana."

[1] As to the conclusion that the bond of the Clerk of the Circuit Court did not cover the duties of the ex officio Clerk of the Superior Court, we are advised by the defendants' brief that they did not raise or rely upon such defense in the court below, and that they do not rely upon it here. Under these circumstances, we do not regard it as necessary to discuss this conclusion of the Court below in detail. It is sufficient, we think, to call attention to the enactment which created the Superior Court. Act of March 9, 1895, L.1895, Ch. 104. With reference to the Clerk of the Circuit Court and the Sheriff of the County, it provides: "* * *, and discharge all of the duties pertaining to their respective office, as they are now or may be required to do by law in the Circuit Court. And they shall be governed in all things by the laws now in force for their government in the Circuit Court." Section 5. We think that the bond covers fees collected in the Superior Court to the same extent as those collected in the Circuit Court.

Defendants state the contested issue as follows: "The primary question of law involved is whether the failure of the defendant Alvina M. Killigrew to account to the United States of America for naturalization fees collected by her pursuant to the Act of Congress on naturalization, entitles the United States of America to recover therefor from the defendant Killigrew and the defendant United States Fidelity and Guaranty Company upon the official bond given to the State of Indiana by the defendant Killigrew to secure the performance of her official duties as Clerk of the Circuit Court and ex officio Clerk of the Superior Court, Lake County, Indiana."

In defending the negative of this issue, the defendants contend, as held by the District Court, that the only governmental entity which can impose an official duty upon the Clerk as to the collection and accounting for naturalization fees is the State of Indiana, and the State having failed to impose such duty, the United States is not entitled to recover from the defendants on their official bond given to the State of Indiana to secure the performance of the duties of the defendant Killigrew as Clerk.

On the other hand, it is the contention of the United States that the defendant Killigrew received the fees in controversy in

---

[1] The bond was in conformity with the Indiana Statute, Burns' 1926, § 11567, which provides: "All official bonds shall be payable to the State of Indiana; and every such bond shall be obligatory to such state, upon the principal and sureties, for the faithful discharge of all duties required of such officer by any law, then or subsequently in force, for the use of any person injured by any breach of the condition thereof."

her official capacity as Clerk of the State Court, and that, therefore, the defendants are liable upon the bond. In support of this contention, it is not claimed that there is any Statute of the State which expressly authorized the defendant Killigrew to collect fees in naturalization proceedings, but it is argued that the State, by various legislative acts, as well as by a consistent policy of acquiescence and approval, has ratified the activities of the Clerks of Indiana Courts, as local officers in naturalization proceedings. It is further argued that the law of Indiana, in the instant matter, is not limited to the Statutes and rules of decisions of that State, but that the power and duty conferred by the Federal Naturalization Act, 8 U.S.C.A. § 400 et seq., upon certain courts and clerks of the various states, including the clerk in the instant suit, became and was the law of Indiana, as well as every other state.

The defendants, predicating their position upon the theory that Killigrew was under no duty prescribed by the laws of Indiana to account for the fees in controversy, cite a number of decisions[2] of the courts of that state in support of their contention that there is no liability upon the bond. The Flynn case, typical of such decisions, denied recovery on the official bond of the Clerk for money received by him for preparing hand bar dockets. The court, on page 161 of 69 N.E., said: "* * * we think that the statutes of this state will be searched in vain in order to discover any provision whereby the duties of preparing the dockets for the printer, as shown, is imposed upon the clerk of the circuit court * * *."

There is no occasion, however, to discuss or analyze this class of authorities for the reason that they deal with situations wherein the official received money in an individual capacity and not by reason of any duty or obligation imposed by law. Such authorities could be material only upon the assumption that the Clerk in the instant case was acting in a capacity other than official, but whether she was so acting is the question around which this controversy revolves.

Defendants contend that Killigrew was acting as an agent or official of the Federal Government, and if not, in a private capacity. In support of this position, much stress is placed upon State ex rel. v. Quill,

53 Ind.App. 495, 102 N.E. 106. This was a suit by Marion County upon the official bond of the Clerk of the Circuit Court to recover the one-half of the naturalization fees which the Clerk had retained under the Federal law. As to the legal status of the Clerk, when collecting such fees, the court, page 108 of 102 N.E., said: "* * * It is obvious that, when a state court assumes jurisdiction conferred by a federal statute, such jurisdiction must be exercised in conformity with the statute conferring the same. The court derives no authority from any other source. It becomes a federal court for the purpose of naturalizing aliens, or at least an agency of the federal government, and the officers of the court are necessarily the officers of the federal government in that behalf." The court in this opinion cites a number of supporting cases, some of which are here relied upon. Others are cited wherein the courts have adopted a contrary view. This contrariety of opinion, however, has been definitely settled, in our judgment, by the Supreme Court in Mulcrevy v. City and County of San Francisco, 231 U.S. 669, 34 S.Ct. 260, 58 L.Ed. 425. There the court considered an action by the City of San Francisco against the Clerk and his surety to recover the portion of naturalization fees retained by the Clerk pursuant to the Federal act. 8 U.S.C.A. § 402. The defendants contended that the Clerk acted "as the representative of the United States in the execution of the policies of the United States" and was, therefore, entitled to the compensation provided by the Naturalization Act. The Supreme Court, in denying defendants' contention, 231 U.S. on page 673, 34 S.Ct. on page 262, 58 L.Ed. 425, said: "* * * and, of course, the fees received by him in naturalization proceedings, because he was clerk of the superior court, were in compensation for official acts, not personal acts." And on the following page, said: "* * * If it be granted that he was made an agent of the national government, his relations to the city were not thereby changed. He was still its officer, receiving fees because he was,—not earning them otherwise or receiving them otherwise, but under compact with the city to pay them into the city treasury within twenty-four hours after their receipt." The court, without citing, recognized state decisions holding to the contrary, and 231 U.S. on page

---

[2] Bowers, Adm'r, v. Fleming, 67 Ind. 541; State ex rel. v. Flynn, 161 Ind. 554, 69 N.E. 159; Carey v. State ex rel., 34 Ind. 105; Scott v. State ex rel. 46 Ind. 203.

675, 34 S.Ct. on page 263, 58 L.Ed. 425, said: "* * * State decisions expressing a contrary view are frankly cited. This contrariety of opinion we need not further exhibit by a review of the cases. We have expressed our construction of the act, and it is entirely consonant with the purpose of the act and national control over naturalization." Subsequent decisions have recognized the Mulcrevy case as controlling.

In People v. Witzeman, 268 Ill. 508, 109 N.E. 335, the court considered a suit by a county against a Circuit Court Clerk to recover that portion of the naturalization fees authorized to be retained by the Clerk. The court, in reversing the Trial Court, and allowing recovery, 268 Ill. on page 513, 109 N.E. on page 337, said: "The decision of the court in the Mulcrevy case clearly determines two points, viz.: (1) That the fees received by the various clerks of the state courts in naturalization cases are compensation for official acts, not personal ones; and (2) that such clerks are required to account to the United States officers for one-half of such fees, and that the other half of such fees retained by them are held by such clerks subject to the laws of the respective states in which they may happen to be serving. * * *"

Numerous other courts have placed the same construction upon this decision of the Supreme Court, among which is Alameda County v. Cook et al., 32 Cal.App. 165, 162 P. 405. There the court considered and decided that a County Clerk of California, in receiving naturalization fees, was acting in his official capacity as a State officer rather than as an agent of the Federal Government. After referring to certain cases sustaining a contrary view, the court, 162 P. on page 407, said: "* * * These cases, however, were all decided previous to the rendition of the opinion of the Supreme Court of the United States in the Mulcrevy case, and therefore their effect as authorities upon the question presented here has been seriously impaired if not destroyed."

It is sought to distinguish the Mulcrevy case and others which have followed it upon the ground that there was state legislation in one form or another which required the Clerk to account for that portion of the naturalization fees retained by the Clerk under the Federal Act. In the Mulcrevy case, in referring to such legislation, the court, 231 U.S. on page 673, 34 S.Ct. on page 262, 58 L.Ed. 425, said: "* * * The salary it provides is declared to be 'in full

compensation for all services rendered.' And it is provided that 'every officer shall pay all moneys coming into his hands as such officer, no matter from what source derived or received, into the treasury of the city and county.' * * *"

In this connection it is of interest, and perhaps material, to observe that the Indiana Statute fixes the compensation to be received by various county officers, including that of Clerk, and Section 7738, Burns' Annotated Statutes 1926, provides: "The county officers named herein shall be entitled to receive for their services the compensation specified in this act, * * * and they shall receive no other compensation whatever."

We think there could be no doubt, under the Mulcrevy case, and others which have followed, but that the State of Indiana could require a Clerk to account for naturalization fees, and, of course, it would necessarily have to be upon the theory that the Clerk received such fees in an official capacity as Clerk. It would also seem to necessarily follow that if a Clerk acted in an official capacity in collecting a portion of such fees so as to be liable to account to the state, that the Clerk acted in the same capacity in collecting the portion to be paid to the Federal Government. In other words, the defendant Killigrew did not act in one capacity as to a portion of the fees collected, and in a different capacity as to another portion. Defendants' argument would, in our judgment, lead to this absurd result. In the Mulcrevy case, in referring to the Naturalization Act, the court, 231 U.S. on page 674, 34 S.Ct. on page 263, 58 L.Ed. 425, said: "* * * It is easily construed and its purpose entirely accomplished by requiring an accounting of one-half of the fees to the United States, leaving the other half to whatever disposition may be provided by the state law. * * *" Thus, it seems plain that state legislation is important only as between the State and the Clerk in determining the disposition of that portion of the fees which the Federal Act allows the Clerk. At any rate, these authorities refute defendants' theory that a Clerk acts merely in a personal capacity, or as an agent of the Federal Government. Reason and logic strongly support this view. The Clerk took no oath and received no appointment as an officer or agent of the Federal Government. True, the power and authority was conferred by a Federal Statute, but it was in her public capacity as Clerk of the State Court. From the very

nature of the situation, she could not and did not act otherwise.

The defendants challenge the power of Congress to impose a duty upon a State Officer, such as is imposed by the Naturalization Act, and an interesting argument concerning our "dual form of Government" is presented. Conceding the exclusive naturalization power of Congress, it is argued that such power does not give Congress the right to demand the services of a State Officer, or to interfere in any manner, directly or indirectly, with the government of those officers, and that the right of the state to govern its own officers by means of its own laws is just as exclusive a power as the power of Congress over naturalization of aliens.

Article 1, Section 8 of the Constitution, delegates to Congress exclusive powers over the naturalization of persons as citizens of the United States. Article 6 declares that "this Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Section 3 of the Naturalization Act of June 29, 1906, 8 U.S.C.A. § 357, provides:

"Exclusive jurisdiction to naturalize aliens as citizens of the United States is conferred upon the following specified courts:

"* * * all courts of record in any State or Territory having a seal, a clerk, and jurisdiction in actions at law or equity, * *."

Section 13 of the same Act, 8 U.S.C.A. § 402, provides: "The clerk of each and every court exercising jurisdiction in naturalization cases shall charge, collect, and account for the following fees in each proceeding:" Then follows the amount of fees which the Clerk is charged with collecting and the manner of their disposal, including the requirement that "one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts, which they are required to render the Bureau of [Immigration and] Naturalization [service,] * * *."

The Act of 1906 was amendatory of various naturalization acts which had been in effect since shortly after the beginning of the Government. As we understand defendants' argument, it is sought to make a distinction in the so-called "law of the land" principle as applicable to an officer of a state, as distinguished from the people of that state. Insofar as the instant situation is concerned, it would seem that such distinction is without merit. In discussing the "law of the land" principle, the court in Claflin v. Houseman, Assignee, 93 U.S. 130, on page 136, 23 L.Ed. 833, said:

"The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the state laws are.

"* * * The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; * * *".

In Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778, the court considered the authority of Congress in regulating naturalization of aliens and authorizing such proceedings in state courts. After pointing out that Congress is without authority to create courts for the state, the court, 217 U.S. on page 517, 30 S.Ct. on page 589, 54 L.Ed. 861, 19 Ann.Cas. 778, said: "* * * But it does not follow that Congress may not constitutionally authorize the magistrates or courts of a state to enforce a statute providing for a uniform system of naturalization, and defining certain proceedings which, when complied with, shall make the applicant a citizen of the United States. * * *"

Again, after noting that the question was not presented as to whether a state might be required to enforce such laws against their consent, on the same page, said: "* * * Unless prohibited by state legislation, state courts and magistrates may exercise the powers conferred by Congress under such laws. * * *"

In Levin v. United States, 8 Cir., 128 F. 826, the court considered a contention similar to that advanced in the instant case. There the defendant was convicted of naturalization frauds committed in a State Court of Missouri. It was argued that the court derived all of its power from the political entity which created it; that no additional authority could be conferred upon it or exercised by it unless granted by state laws, and that the laws of Missouri never granted to any court in that state the pow-

er or permission to naturalize aliens in accordance with the laws of the United States. The court rejected this contention, and after an interesting discussion of the constitutional question involved, including both the "dual form of government" and "law of the land" principles, 128 F. on page 832, said: "* * * The resistless conclusion is that the Congress of the United States was by section 8, art. 1, of the Constitution, granted the necessary authority to vest in the courts of the states having common-law jurisdiction the judicial power to admit qualified aliens to citizenship; that, in the absence of legislative authority or permission from the states which created them, such courts may lawfully exercise this power and that section 2165 of the Revised Statutes is neither unconstitutional nor invalid."

In Dallemagne v. Moisan, 197 U.S. 169, on page 174, 25 S.Ct. 422, on page 424, 49 L.Ed. 709, the court said: "* * * It has long been held that power may be conferred upon a state officer, as such, to execute a duty imposed under an act of Congress, and the officer may execute the same, unless its execution is prohibited by the Constitution or legislation of the state. * * *"

There is another line of cases which affords support to plaintiff's position, and they are to the effect that Constitutional power, when the text is doubtful, may be established by usage. Inland Waterways Corp. v. Young, 309 U.S. 517, 60 S.Ct. 646, 84 L.Ed. 901; Levin v. United States, supra; Ex Parte Gist, 26 Ala. 156. Regardless of the fact that the State of Indiana has not, by legislation, expressly recognized the authority of Congress in the involved matter, yet it has, for more than a century, acquiesced in the power assumed by Congress almost from the inception of the Federal Government. In discussing a similar situation, the court, in Levin v. United States, supra, 128 F. on page 829, said: "* * * From the day when this act gave the courts of the states the power to issue certificates of citizenship to qualified aliens to the present moment, through all the legislation and judicial action of more than a century, that grant to the state courts has been maintained undisturbed, and the power thus bestowed has been exercised by the courts of the states with the uninterrupted acquiescence of the legislative, executive, and judicial departments of the nation and of the states. * * *"

In Ex parte Gist, supra, 26 Ala. at page 164, the court said: "* * * by long acquiescence, contemporaneous expositions, and extensive and uniform recognition of its validity, * * *; and if we were doubtful as to the constitutionality of this law, these considerations would go far, if indeed we should not be required under the decisions of the Supreme Court of the United States, to determine in favor of its validity * * *."

The conclusion therefore appears inescapable that the defendant Killigrew collected the naturalization fees in suit solely in her capacity as Clerk of the Indiana Court by reason of the authority bestowed by Congress, and that it is immaterial that the State of Indiana has not expressly recognized such authority. The naturalization fees having been collected by her in her official capacity and according to law, the defendants, and each of them, are liable to the United States of America upon the bond in suit. It follows that the District Court erred in sustaining the motion to dismiss the complaint and entering judgment thereon.

The cause is therefore reversed and remanded with directions to proceed in conformity with the views herein expressed.