THE PEOPLE, for use of County of LaSalle, Appellant, *vs.*
JOHN L. WITZEMAN *et al.* Appellees.

*Opinion filed June 24, 1915.*

1. FEES AND SALARIES—*fees received by clerks of circuit courts
in naturalization cases are received in their official capacity.* The
fees received by clerks of the circuit courts in Illinois in naturali-
zation cases, as provided by the Federal statute of 1906, must, un-
der the construction given by the United States Supreme Court
to such statute in *Mulcrevy* v. *City and County of San Francisco,*
231 U. S. 669, be held to be received by such clerks in their offi-
cial capacity as clerks and not in their personal capacity.

2. SAME—*fees retained by clerks of circuit courts in naturali-
zation cases belong to county.* The fees in naturalization cases
which, under the Federal act of 1906, are to be retained by the
clerks of the circuit courts after they have remitted one-half of
the amount collected to the United States officers, are fees of the
office and are subject to the constitution and laws of the States
where the courts are located, and in Illinois they must be ac-
counted for and paid over to the county as other fees of the office.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit Court
of LaSalle county; the Hon. S. C. STOUGH, Judge, pre-
siding.

W. E. REDMON, and W. I. HIBBS, for appellant.

DUNCAN & O'CONOR, for appellees.

Mr. JUSTICE WATSON delivered the opinion of the court:

Suit was instituted in behalf of the county of LaSalle,
in the circuit court of that county, to recover on the bond
given by John L. Witzeman as clerk of the circuit court
of said county. Two suits involving the same character of
causes of action and disposed of in the same way are here
involved, and by agreement they are taken as one cause
and the decision of one case is to be the decision and is
to control in both.

The original declaration contained three separate and distinct alleged breaches of the conditions of the bond. The first and third of the breaches alleged were dismissed and a general demurrer was sustained as to the second breach thereof and a judgment entered that the plaintiff take nothing by its suit, the costs of the proceeding being ordered taxed to the plaintiff. Upon appeal to the Appellate Court for the Second District the judgment of the circuit court was affirmed, and a certificate of importance having issued out of said Appellate Court, a further appeal brings the record before us for review.

The second breach of the bond as set forth in the declaration before us is, in substance, that the appellee John L. Witzeman, as clerk of the circuit court of his county, received fees for the issuance of first papers or declarations in naturalization cases and for the issuing of final certificates in such cases, and that his duty as such clerk required him to report such fees so collected by him in such naturalization cases, in his semi-annual reports to the board of supervisors of said county and to account for and pay over said fees to the county treasurer; that he neglected said duty and failed and refused to report said fees so collected in his semi-annual reports and converted said fees to his own use, and that the fees so collected and retained by him and for which he failed and refused to account, amounted, in the aggregate, to the sum of $2000. The action of the court in sustaining the general demurrer to this count of the declaration is assigned for error.

The fees involved in this proceeding are those fixed by the Federal statute (Act June 29, 1906, U. S. Comp. St. Supp. 1909, p. 478,) relating to naturalization, wherein exclusive jurisdiction is given to certain specified courts therein named, and including United States circuit and district courts in States and Territories, and also "all courts of record in any State or Territory now existing, or which may hereafter be created, having a seal, a clerk, and juris-

diction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited." Section 13 of said statute fixes the fees to be charged by the respective clerks of courts of record for each item of service to be rendered, and provides as follows: "The clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceedings. The remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts which they are hereby required to render the Bureau of Immigration and Naturalization, and paid over to such bureau within thirty days from the close of each quarter in each and every fiscal year, and the money so received shall be paid over to the disbursing clerk of the Department of Commerce and Labor, who shall thereupon deposit them in the treasury of the United States," etc.

It is urged by appellees that it was clearly not the purpose of this statute to require the clerks of courts of record in this State to account for the fees collected by them, and that if a clerk can be held responsible to the county for one-half of the fees received by him in naturalization cases, then he is legally responsible for the total amount of money received by him in such proceedings, and that it is therefore clear that it was not intended that the clerk receive such moneys, denominated "fees," in any strictly official capacity.

Section 9 of article 10 of the constitution of our State provides: "The clerks of all the courts of record * * * shall receive, as their only compensation for their services, salaries to be fixed by law, which shall in no case be as much as the lawful compensation of a judge of the circuit court of said county, and shall be paid, respectively, only out of the fees of the office actually collected. All fees, perquisites and emoluments (above the amount of said salaries) shall be paid into the county treasury." Sec-

tion 10 of said article 10, after making it the duty of the county board to fix said salary and limiting the same, provides "that the compensation of no officer shall be increased or diminished during his term of office. All fees or allowances by them received, in excess of their said compensation, shall be paid into the county treasury." Section 13 of said article 10 requires every person elected to an office who shall be paid, in whole or in part, by fees, to make a semi-annual report, under oath, of his fees and emoluments.

Following the directions of the constitution, the legislature enacted laws requiring every county officer who shall be paid, in whole or in part, by fees, to keep a full, true and minute account of all fees and emoluments of his office, and on the first day of June and December of each year to make a return in writing, under oath, to the chairman of the county board, of all fees and emoluments of his office, "of every name and character," and it is made the duty of the county board to examine such report and ascertain the balance of such fees, if any, and order such officer to pay over such balance, if any, to the county treasurer. (Hurd's Stat. 1913, chap. 53, sec. 51.)

It will be noted, in reading section 13 of the United States statute above quoted, relating to fees in naturalization cases, that the fees to be paid in such cases are not to be paid to the *person* who chances, at the time of such payment, to be holding the office of clerk of the court, but the fees are payable to the *clerks* of the courts. It is wholly by virtue of the office that the fees may be collected by him. This point, if not entirely clear as a matter of reason, has been made clear by a decision of the United States Supreme Court in the case of *Mulcrevy* v. *City and County of San Francisco,* 231 U. S. 669, involving fees collected and retained in naturalization cases by the clerk of the superior court of the city and county of San Francisco under the same statute as the one here in question.

In the decision of that case the Supreme Court of the United States said: "The fees received by him in naturalization proceedings because he was clerk of the superior court were in compensation for official acts,—not personal acts. But it is contended by plaintiffs in error that the fees having been received officially is not of importance; that nevertheless he acted as the representative of the United States in execution of the policies of the United States, and, being by the act of Congress invested with these powers, he is entitled for himself to the compensation prescribed by the act for their execution, without any liability to account for them to the city. The last proposition, however, does not follow from the others, and the others are but confusing. If it be granted that he was made an agent of the national government, his relations to the city were not thereby changed. He was still its officer, receiving fees because he was, not earning them otherwise or receiving them otherwise, but under compact with the city to pay them into the city treasury within twenty-four hours after their receipt. Under the contention of plaintiffs in error a rather curious situation is presented. Mulcrevy was elected to an office constituted by the municipality under the authority of the State. He was given a fixed salary of $4000, with the express limitation that it should be his complete compensation. He agreed that all other moneys received by him officially should be paid into the treasury of the city. He was given office accommodations, clerks to assist him, and yet contends that, notwithstanding such equipment and assistance, notwithstanding his compact, he may retain part of the revenues of his office as fees for his own personal use. We cannot yield to the contention. Nor do we think the act of Congress compels it. The act does not purport to deal with the relations of a State officer with the State. To so construe it might raise serious questions of power, and such questions are al-

ways to be avoided. We do not have to go to such lengths.
The act is entirely satisfied without putting the officers of
a State in antagonism to the laws of the State,—the laws
of which give them their official status. It is easily con-
strued and its purpose entirely accomplished by requiring
an accounting of one-half of the fees to the United States,
leaving the other half to whatever disposition may be pro-
vided by the State law."

The charter of the city and county of San Francisco
fixed the salary of the clerk of said superior court at a
certain sum, and provided: "The salaries provided by this
charter shall be in full compensation of all services ren-
dered, and every officer shall pay all moneys coming into
his hands as such officer, no matter from what sources de-
rived or received, into the treasury of the city and county."
It will be observed that the language of the charter under
which the clerk in the *Mulcrevy case* attempted to with-
hold the fees there received by him is not materially differ-
ent from the constitution and statute of this State relative
to the fees of clerks in this State, except that the language
of our own laws is even stronger and more positive than
that of the charter referred to.

The decision of the court in the *Mulcrevy case* clearly
determines two points, viz.: (1) That the fees received
by the various clerks of the State courts in naturalization
cases are compensation for official acts,—not personal ones;
and (2) that such clerks are required to account to the
United States officers for one-half of such fees, and that
the other half of such fees retained by them are held by
such clerks subject to the laws of the respective States in
which they may happen to be serving. We must therefore,
under the authority of the decisions of this court, hold that
upon the question whether the services rendered by appel-
lee Witzeman in said naturalization cases, and the fees paid
to him therein, were rendered and received by him in his

268 — 33

official or personal capacity, the decision of the Supreme
Court of the United States is binding upon us, not only
in the case in which the decision is rendered, but in any
subsequent case based upon substantially the same state of
facts. *McInhill* v. *Odell,* 62 Ill. 169; *Black* v. *Lusk,* 69
id. 70; *Rothschild & Co.* v. *Steger Piano Co.* 256 id. 196.

As the facts in the case at bar are in substance the
same as those in the *Mulcrevy case, supra,* we hold that
the fees retained by appellee Witzeman, as set forth in
the declaration, were received by him in his official capac-
ity. Therefore the question remaining to be determined
is whether or not Witzeman, under the laws of our own
State, should be held to account for and pay over the fees
received by him as clerk of the circuit court in naturaliza-
tion cases.

The laws of our State as above quoted and set forth
require the clerks of courts shall receive as their only com-
pensation for such official services, salaries to be fixed by
law, and that all fees, perquisites and emoluments, of
whatever name or character, above such salary, shall be
paid into the county treasury. If the fees here in question
were paid to appellee Witzeman in his official capacity and
the laws of the State required him to account for the fees,
emoluments and perquisites, of whatever name or charac-
ter, received by him above his salary, and the declaration
here involved alleges such fees so retained by him were
in excess of such salary, we cannot see why the same rule
that has been applied by this court in *People* v. *Foster,* 133
Ill. 496, *County of LaSalle* v. *Milligan,* 143 id. 321, *Carroll
County* v. *Durham,* 219 id. 64, and *Jones* v. *O'Connell,* 266
id. 443, should not be held applicable to and controlling in
the case at bar, and we hold that the fees so held and re-
tained by Witzeman were fees of his office and subject to
the control and direction of the laws of this State and
should be accounted for and paid over.

The judgment of the Appellate Court for the Second District and that of the circuit court of LaSalle county are each reversed, and the cause is remanded to the circuit court of LaSalle county for further proceedings in conformity with this opinion. *Reversed and remanded.*