# County of Lake, Appellee, v. Carl P. Westerfield, Appellant.

## Gen. No. 6,138.

1. OFFICERS, § 52*—*what is nature of liability for interest on public moneys.* The decisions which hold that in the absence of a controlling statute public officers are entitled to the interest collected on public moneys in their hands and are not obliged to account therefor are based mainly on the consideration that an absolute liability is imposed on the officer for the payment of the principal sums collected by him, in which case it is said that he is not merely the custodian or bailee thereof, and does not assume the liability of a trustee in regard to such moneys.

2. COUNTIES, § 49*—*what is nature of liability of county treasurer for interest on public funds.* A county treasurer is an absolute insurer of the fund coming to his hands in the sense that he cannot excuse a failure to pay it over on grounds which would excuse a trustee for such failure.

3. COUNTIES, § 49*—*why funds held by county treasurer should not be regarded as private property.* Hurd's Rev. St., ch. 36, sec. 4 (J. & A. ¶ 2908), providing that a county treasurer shall receive and *safely keep* all revenues and funds authorized by law to be paid to him, and disburse the same pursuant to law, and section 81 of the Criminal Code (J. & A. ¶ 3625), making it a penal offense for a country treasurer for his own use to loan any of the money intrusted to him, forbid the conclusion that such funds should be regarded as the private property of the officer.

4. OFFICERS, § 52*—*when interest money in hands of officer in official capacity.* Interest received by a public officer on funds deposited in banks by him in his official capacity is an increment to such funds, hence the right to such interest is vested in the public,

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and on its receipt by the office such interest becomes money in his hands in his official capacity.

5. COUNTIES, § 49*—*how liability of county treasurer for interest determined.* The disposition of interest received by a county treasurer on deposits of public money in his hands in his official capacity is controlled by section 10 of article X, of the Constitution, providing that all fees or allowances received by a public officer in excess of the amounts allowed to such officer by the county board shall be paid into the county treasurer, and by section 52 of the Fees and Salaries Act (J. & A. ¶ 5654), requiring that all fees, perquisites and emoluments received by county officers of the certain classes in excess of the amounts allowed to such officers by the county board shall be paid into the county treasurey.

6. OFFICERS, § 62*—*what constitutes fees, perquisites and emoluments.* The words "fees, perquisites and emoluments," used in section 52 of the Fees and Salaries Act (J. & A. ¶ 5654), are sufficiently comprehensive to include every payment to a public officer in his official capacity.

7. CONTRIBUTION, § 1*—*when doctrine of compelling contribution among wrongdoers inapplicable.* The cases which hold the sureties on the bond of a public officer are not entitled to indemnity from their principal as being involved in a contract to perform an illegal and criminal act, the law not compelling contribution among wrongdoers, or enforcing illegal contracts, have no application to an action by an innocent plaintiff against a defendant who is charged with an illegal act.

8. COUNTIES, § 49*—*when county treasurer must pay fees into county treasury.* Full force and effect must be given to the requirements of section 52 of the Fees and Salaries Act (J. & A. ¶ 5654), requiring that all fees, perquisites and emoluments received by county officers of certain classes in excess of the amounts allowed to such officers by the county board must be paid into the county treasury, as is shown by the construction given to the statute by the Supreme Court, holding that fees received by clerks of Circuit Courts in naturalization cases under the Federal Act of 1908 are fees of the office, which under the statute must be paid into the county treasury.

9. COUNTIES, § 49*—*how Fees and Salaries Act construed relative to collection of and accounting for interest by county officers.* Although section 12 of the Cities, Towns and Villages Act (J. & A. ¶ 2061) in express terms requires the treasurer of a sanitary district to collect and account for interest on public moneys deposited by him in banks, and while section 52 of the Fees and Salaries Act (J. & A. ¶ 5654) does not in terms require county officers so to

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

collect and account, yet this consideration is not controlling of the construction of the latter statute so as to require an inference that the Legislature therein intended to recognize the right of the county officer to retain interest received on public funds, or as authorizing or acquiescing in a misappropriation of public funds in the absence of express statutory provisions, section 12 merely requiring the collection and accounting for such interest, where without such provision such officer would not be required to collect interest.

10. OFFICERS, § 62*—*what is custom among public officers regarding interest on public funds*. It is common knowledge that there is a long established custom by which public officers collect and appropriate to their own use interest received on public funds, with the knowledge and acquiescence of every one.

11. STATUTES, § 194*—*when existence of custom inconsistent with statute disregarded*. If the meaning of a statute is clear and unambiguous, a practical construction by long established custom which is inconsistent with such meaning will have no weight and will not be followed.

12. COUNTIES, § 44*—*what constitutes a perquisite within Fees and Salaries Act*. Interest received by a county treasurer on deposits of public money is a "perquisite" within the meaning of section 52 of the Fees and Salaries Act (J. & A. ¶ 5654), requiring that all fees, perquisites and emoluments received by public officers of certain classes in excess of the amounts allowed to such officers by the county board be paid into the county treasury.

13. COUNTIES, § 44*—*Fees and Salaries Act not ambiguous*. Section 52 of the Fees and Salaries Act (J. & A. ¶ 5654), requiring that all fees, perquisites and emoluments received by county officers of certain classes in excess of the amounts allowed to such officers by the county board be paid into the country treasury, *held* not ambiguous so as to require or admit the aid of contemporaneous construction by which county treasurers are allowed to retain for their own use interest received by them from deposits of money in their hands in their official capacity.

14. OFFICERS, § 62*—*when officer retaining public funds not guilty of bad faith*. The long continued and improper practice of public officers in retaining public funds in their hands, claiming them as their own, leads to the conclusion that one so doing is acting honestly and is not guilty of bad faith in following the custom of his predecessors.

15. ESTOPPEL, § 93*—*when estoppel inapplicable to State*. Since the State cannot be estopped by laches from claiming its own, the actual ownership of money required by statute to be paid into the public treasury cannot be permitted to be controlled by the con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

County of Lake v. Westerfield. 196 Ill. App. 432.

sideration that there exists a long continued and improper practice of officers in retaining such funds in their hands, claiming such funds as their own.

16.  COUNTIES, § 49*—*what is nature of liability of county treasurer failing to pay into county treasury interest received on public funds.*  Although interest received by a county treasurer on public funds in his hands in his official capacity be so received from various funds other than the county tax, yet, it being his duty to pay such interest into the county treasury, he is a wrongdoer if he fails so to pay such interest, and stands in the same legal attitude as though he took and appropriated to his own use any other money from the treasury.

17.  COUNTIES, § 49*—*when fact that money abstracted by county treasurer is taxes belonging to another municipality no defense.*  A county treasurer cannot defend an action brought by the county for wrongfully abstracting money from the county treasury on the ground that the particular money abstracted was received from taxes levied by another municipality and was ultimately to be paid to such municipality.

Appeal from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed November 18, 1915.

A. F. BEAUBIEN and FRANK L. SHEPARD, for appellant.

R. J. DADY and E. M. RUNYARD, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Carl P. Westerfield was, from December 5, 1910, to the beginning of this suit, county treasurer and *ex officio* county collector of the county of Lake, and received and collected from certain banks $7,343.90 as interest or compensation for the deposit with or use by such banks of public funds and moneys that had from time to time come into his hands as such officer, and converted such money so received to his own use, claiming it as his own. This action of assumpsit was brought against him as an individual by the appellee, County of Lake, to recover that money, and on a trial

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

before the court without a jury, it being admitted that
he had so received that sum, judgment was rendered
against him for that amount, from which judgment
this appeal is prosecuted.

It was also admitted on the trial that appellant was
not entitled to the money on account of salary, clerk
hire or other necessary expenses; that the county had
demanded the money of him, and he had refused to
account for it and turn it over on the ground that it
was not an earning of his office, but his own private
property. The questions presented and argued here
are whether a county treasurer is required to account
moneys coming to his hands, and if he is liable to ac-
count for such interest, whether to the county or to the
various taxing municipalities from which he derived
the fund on which such interest was received. It is not
questioned that this suit is properly brought against
him as an individual if he is liable to account to the
county for the amount claimed.

One inquiry is whether public officers in the absence
of a controlling statute are entitled to interest collected
on public funds in their hands. Counsel for appellant
say there is a conflict of authority, and cite: *"Shelton
v. State,* 53 Ind. 331, 21 Am. Rep. 197; *State v. Walsen,*
17 Colo. 170, 28 Pac. 1119, 15 L. R. A. 456; *Renfroe v.
Colquitt,* 74 Ga. 618; *Commonwealth v. Godshaw,* 92
Ky. 435, 17 S. W. 737; *Maloy v. County Commissioners,*
10 N. M. 638, 62 Pac. 1106, 52 L. R. A. 126,"* holding
that the officer is not liable to account for such interest.
But they correctly say that these decisions rest mainly
on the consideration that an absolute liability is im-
posed upon the officer for the payment of the principal
sum; that it is not a case of bailment and he does not
assume the liability of a trustee or agent that is merely
the bailee or custodian of the money in his hands. In
*Shelton v. State, supra,* it is expressly held that "The
money which he receives becomes his own money."
Counsel cite *Thompson v. Board of Trustees,* 30 Ill.

99; *Town of Cicero v. Hall,* 240 Ill. 160; and *Town of Cicero v. Grisko,* 240 Ill. 220, in support of their contention that the public officer is, in this State, not regarded as a bailee or trustee of the fund, and therefore they say the conclusion of the courts of other States, based on that consideration, should be here adopted. It is true that in this State the county treasurer is, in a sense, an absolute insurer of the fund coming to his hands, and cannot excuse a failure to pay it over on grounds that would be available to a trustee of a fund.

. But under our statutes the fund should not be regarded as the private property of the officer. It is provided in section 4 of chapter 36 of the Illinois Statutes (J. & A. ¶ 2908), that the county treasurer shall receive and *safely keep* all revenues and other public moneys of the county, and all moneys and funds authorized by law to be paid to him, and disburse the same .pursuant to law, and section 81 of our Criminal Code (J. & A. ¶ 3625), makes it a penal offense for a county treasurer to loan for his own use, with interest, any portion of the money intrusted to him for safe-keeping, disbursement, transfer or other purpose. These two statutes forbid the conclusion that the fund is the private property of the officer. We are not aware that any such doctrine has ever been held in this State. That the title to public funds is not in their keepers was assumed as a matter of course in *Dreyer v. People,* 176 Ill. 590. It is true that in *State v. Walsen, supra,* the Supreme Court of Colorado placed its denial of liability of the officer for interest received in part on other grounds; but the reasoning of that case is not in harmony with our decisions, and that much of it is not in accordance with the general current of authorities is pointed out in *State v. Mc-Fetridge,* 84 Wis. 473 (20 L. R. A. 223), a case in which the authorities are very thoroughly reviewed, and in which *Hughes v. People,* 82 Ill. 78; *Cooper v. People,*

85 Ill. 417; and *City of Chicago v. Gage,* 95 Ill. 593, are relied on, among other cases, in support of the doctrine that the interest on deposits of public funds is an increment to the funds of the State deposited by the officer in banks in his official capacity, and therefore the right to such interest is vested in the State, and on receipt thereof by the officer it becomes money in his hands belonging to his office.

But apart from the consideration whether interest so received is an increment of the fund, we have controlling constitutional and statutory provisions as to its disposition. Section 10 of article X of our Constitution provides that the county board shall fix the compensation of all county officers with the amount of their necessary clerk hire, stationery, fuel and other expenses, and in all cases where fees are provided for, said compensation shall be paid only out of the fees actually collected, and that all fees or allowances by them received in excess of their said compensation shall be paid into the county treasury. It is provided in section 52 of our Fees and Salaries Act (chapter 53, Revised Statutes, J. & A. ¶ 5654) that all fees, perquisites and emoluments received by said county officers in counties of the first and second class (above the amount of their compensation fixed by the county boards and for clerk hire and other necessary expenses) shall be paid into the county treasury. If this item of interest received by appellant was a perquisite or emolument of his office, as county treasurer, it should have been paid into the county treasury. In *Hughes v. People, supra,* the question arose whether interest received on deposits made by the county collector of county funds belonged to him or the county, and it seems to have been considered beyond question that interest so received was a perquisite or emolument of his office, and "Being a perquisite or emolument acquired by official position should be accounted for to the county." The court in *People v. Foster,* 133 Ill.

496, on page 519, in discussing the term "perquisites," said that the Legislature in using that term along with the words "fees and emoluments" used language so comprehensive as to include every payment to an officer which comes to him as such officer.

There is a line of authorities referred to in *State v. McFetridge, supra,* holding that sureties on an official bond are not liable for interest on public moneys where the officer violated a criminal statute in receiving such interest. It was held in *Estate of Ramsay v. Whitbeck,* 183 Ill. 550, that sureties were not entitled to indemnity from their principal because they were involved in a contract with him to perform an illegal and criminal act, on the long established principle that the law will not compel contribution among wrongdoers, and will not aid in the enforcement of an illegal contract. But we see no application of those decisions to this case. This is a suit against the individual, charged with the illegal act by a plaintiff, that is entirely innocent. The late case of *People v. Witzeman,* 268 Ill. 508, is instructive in construing the statute requiring fees, perquisites and emoluments received by a public officer, above his salary, to be paid into the county treasury, and its reasoning in holding that fees in naturalization cases, under the Federal Act of 1906, retained by the clerks of the Circuit Court, are fees of the office and must be accounted for and paid over to the county, indicates that full force and effect should be given to that statutory requirement.

It is argued that a long established custom of public officers to collect and appropriate to their own use interest received on public funds, with the knowledge and acquiescence of everybody, amounts to a practical construction of these constitutional and statutory provisions, and our attention is called to the fact that in *Dreyer v. People, supra,* such custom was said to be a matter of common knowledge. The same consideration was urged on the court in *Whittemore v. People,* 227

Ill. 453, and the authorities on contemporaneous construction are there reviewed. The substance of the authorities expressed in varying language is, if the meaning of a statute is clear and unambiguous, a practical construction inconsistent with that meaning will have no weight and will not be followed. If, in the instant case, the interest received by appellant was a perquisite of his office, and it is decided that it is, there is nothing in this statute to construe more than if it had, in express terms, required that interest received by county treasurers on public funds deposited by them should be paid into the county treasury. We do not think there is any ambiguity about the statute requiring or admitting the aid of contemporaneous construction.

Our attention is called to the Statute of 1893, repealed in 1897, providing that treasurers and other custodians of public funds deposited in banks shall account for interest thereon at a rate of not less than two per cent. per annum, and that three-fourths of such interest shall belong to the public and be added to the fund, and the remaining one-fourth shall remain to such officer or custodian. Also to our present Cities, Villages and Towns Act (Hurd's Statutes ¶ 732, J. & A. ¶ 2061), providing that the treasurer of the sanitary district shall, when the moneys of the district are deposited with a bank, require the bank to pay the same rate of interest that it is accustomed to pay to depositors under like circumstances in the usual course of its business, and that the interest so paid shall be placed in the general funds of the district, and it is argued from these provisions that the Legislature has recognized and does recognize the right of the public officer to retain interest received on public funds in the absence of such statutory provisions. We do not think this consideration controlling. The existing sanitary district statute has some force in requiring the officer to collect interest on public funds, which, in

the absence of the statute, he would be under no obligation to do.  But we do not see that the fact that the Legislature undertook in this way to increase the funds of the sanitary district should be construed as authorizing or acquiescing in a misappropriation of public funds in the absence of such a statute.  The consideration of the long-continued, improper practice of officers in retaining public funds in their hands, claiming them as their own, leads to the conclusion that one so doing is acting honestly and is guilty of no bad faith in following the custom of his predecessors.  But to permit such consideration to control the actual ownership of the money would be to estop the State on the doctrine of laches from claiming its own, which is not permissible.

It is insisted if the interest collected by appellant does not belong to him, it is an accretion of the various funds in his hands, and the county would have no right to recover a greater amount than the interest on the fund derived from the county tax.  We see no force in this contention.  If this interest belonged in the county treasury and it was the duty of appellant to place it there, he was, in legal contemplation, a wrongdoer, and while under the circumstances moral turpitude is not imputed, still he stands in the same legal attitude that he would if he had taken any other money out of the county treasury and appropriated it to his own use.  It would be absurd to say that a county treasurer could defend a suit brought by the county for wrongfully abstracting money from the county treasury on the ground that the particular money, so abstracted, was received from taxes levied by some other municipality and was ultimately to be paid by him to such other municipality.  We are of the opinion that under the admitted facts the judgment is right, and therefore it is affirmed.

*Judgment affirmed.*