(No. 32735.—

In the Matter of the Estate of Edward J. Kaindl, Deceased.— (County of Cook, Appellant, *vs.* John C. Richert, Exr., Appellee.)

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

John Gutknecht, State's Attorney, of Chicago, (Gordon B. Nash, Melvin F. Wingersky, and Meyer H. Goldstein, of counsel,) for appellant.

Schuyler, Richert & Stough, of Chicago, (Jay Stough, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This cause is again here as a result of an allowance of a petition to appeal from the Appellate Court for the First District wherein it was determined that the estate of Edward J. Kaindl, deceased, should not be required to pay into the county of Cook its claim for $18,738.45. In 411 Ill. 608, this court considered the same cause and decided that we were without jurisdiction and transferred the case to the Appellate Court for the First District. For convenience we will repeat the stipulation of facts upon which the problem was submitted originally to the trial court, a jury being waived. The stipulation, in substance, was that Edward J. Kaindl served as recorder of deeds of Cook County from December, 1935, to September 8, 1948; that as county recorder of Cook County, or by a similar official designation, he had been designated as successor trustee, *eo nomine,* and that he had collected various fees for acting as successor trustee under trust deeds in the nature of a mortgage; that the fees involved herein arose in connection with executing releases of trust deeds in which the county recorder of Cook County was designated successor trustee; that the designation of Edward J. Kaindl as successor trustee was not in any case by name "Edward J. Kaindl" but was in every instance a designation of "County Recorder of Deeds of Cook County, Illinois," "Acting Recorder of Deeds of Cook County," "County Recorder of Cook County," or some similar designation, all of which were made without the solicitation or knowledge of Edward J. Kaindl; that all of the fees collected from that source were deposited in an account standing in the name of "Edward J. Kaindl successor in trust fund" in the First National Bank of Chicago; that on September 8, 1948, at the time of the death of Edward J. Kaindl, the bank account containing the funds in controversy had reached the sum of $18,738.45, including $1025.77 transferred from the account of his predecessor in office and constitutes the entire proceeds

from the fees collected for services rendered as such trustees, after deducting the sum of $2287.57, paid for premiums on insurance and bonds, which appear to have been purchased in connection with his official capacity. Kaindl had made no withdrawals therefrom for his personal use. The physical process of preparing and executing the releases, issuing receipts from the official receipt .books for the fees collected and maintaining records thereof, as well the commingling of the money derived therefrom with other money from fees collected in the office, and from time to time making deposits of such fees so collected in the "Edward J. Kaindl successor in trust fund" account, were all performed during county business office hours by county employees using books, records and papers belonging to Cook County.

The sole inquiry is, were the fees paid to Edward J. Kaindl under the foregoing circumstances the property of the county of Cook or did they properly belong to Edward J. Kaindl personally?

Section 8 of the act relating to mortgages (Ill. Rev. Stat. 1949, chap. 95, par. 9,) reads as follows:

"Every mortgagee of real or personal property, his assignee of record, or other legal representative, having received full satisfaction and payment of all such sum or sums of money as are really due to him from the mortgagor, and every trustee, or his successor in trust, in a deed of trust in the nature of a mortgage, the notes, bonds or other indebtedness secured thereby having been fully paid, shall, at the request of the mortgagor, or grantor in a deed of trust in the nature of a mortgage, his heirs, legal representatives or assigns, (1) in case such mortgage or trust deed has been recorded, enter a release or satisfaction upon the margin of the record, of such mortgage or deed of trust in the recorder's office, which release or satisfaction shall be attested upon the margin of said record by the recorder of said county, and when so attested shall for-

ever thereafter discharge and release the same, and shall bar all actions or suits brought or to be brought thereupon, or, (2) in case such mortgage or trust deed conveys personal property and has been filed, withdraw such mortgage or deed and execute a release thereof. The several recorders shall furnish forms for such release which may be in substantially the following form: * * *."

Section 9 of article X of the constitution provides, in substance, that the recorder of deeds of Cook County, shall receive, as his only compensation for services, a salary to be fixed by law to be paid only out of the fees of the office actually collected, and that all fees, perquisites and emoluments (above the amount of said salary) shall be paid into the county treasury.

Section 31 of the Fees and Salaries Act (Ill. Rev. Stat. 1949, chap. 53, par. 49,) provides, in substance, that the recorder of deeds of Cook County shall be paid by the said Cook County as the only compensation for services rendered in the capacity of recorder or in any other capacity, the sum of $9000 per annum.

It is the contention of the appellant that the law has fixed and limited the compensation of the county recorder of Cook County and places upon him a duty to pay all fees collected in his office in excess of the sum of $9000 into the county treasury; that Kaindl performed none of the services in the collection of the fees in question, never used any of said moneys personally, and whatever authority he possessed to collect such fees was derived from his official position as recorder of deeds; that these and other factors lead inescapably to the conclusion that the services rendered by Kaindl as successor trustee were official in character, and that the fees derived therefrom were the property of Cook County. It is argued by appellee that Kaindl received the moneys in question for rendering private services separate and distinct from those that he performed for the public as county recorder, and that the services in question

were beyond the scope of the duties of his office, and statutory and constitutional limitations on his compensation are inapplicable.

The Appellate Court in affirming the superior court of Cook County sustained the contention of the Kaindl estate. It was their view that the language in section 31 of the Fees and Salaries Act, (hereinbefore cited,) "or in any other capacity," signified official capacity; and that since it was not mandatory that Kaindl perform the services as successor trustee, it was private and not official in character; and that the fees flowing therefrom belonged to Kaindl personally.

A study of the stipulation clearly reveals that Kaindl was acting in his official capacity, and that the fees collected as successor trustee were "fees, perquisites and emoluments" of his office. (1) The designation of Edward J. Kaindl as successor trustee was not in any case "Edward J. Kaindl," but in every instance the successor trustee was designated as "County Recorder of Deeds of Cook County, Illinois," "Acting Recorder of Deeds of Cook County," "County Recorder of Cook County," or some equivalent designation, obviously having in mind whosoever might be the recorder of deeds at the moment of the appointment. It will be observed that the parties to the mortgage and trust deeds in adopting an official designation rather than the naming of a person, had in mind the continuous and uninterrupted existence of the "office" as variously designated. (2) Immediately following Kaindl's succession to office, he opened an account in the First National Bank of Chicago in the name of "Edward J. Kaindl, Successor in Trust, Fund," in which account all moneys and fees collected by him pertaining to the items in question were deposited. The stipulation further reveals other factors that point to the official character of the services under scrutiny. (3) An employee in the recorder's office of Cook County checked the release deeds and cancelled notes when a release was sought

wherein the recorder of Cook County was named as successor trustee. (4) A set schedule of fees, according to the amount of mortgage indebtedness was charged for a release deed, and the county employees kept records of such releases. Such employees were paid wholly from county funds by the county treasurer, just as any other county employee. (5) The general order book of the county recorder's office was used by individuals seeking releases when they placed an order for releases with the office of the county recorder, and the same book was also used by the county recorder's office for abstract orders and chancery searches. (6) When fees were paid by a person for a release, he was given an official county recorder's receipt used by the county recorder in other official transactions. (7) Such receipt was stamped by the cashier in the county recorder's office, and the money placed in the county till and mingled with other moneys. Entries were made in the daily cash receipt reports, and thereafter entered in the general account book of the county recorder's office. (8) During the thirteen years that Kaindl was in office he never once diverted any of the controverted fees to his personal use.

An examination of exhibit "A," attached to the stipulation, discloses that on December 1, 1935, $1025.77 was transferred from Clayton F. Smith, his predecessor in office, to Edward J. Kaindl, Recorder, and that between December 1, 1935, and September 8, 1948, there are itemized collections of "Successor in Trust" fees totaling $20,000.25. Also contained in this exhibit is a list of disbursements: (a) "Premium on surety bonds—$1525;" (b) "Premium on safe and burglary bonds—$50.79;" (c) "Inside and messenger holdup—$711.78." The average annual collection involved in the present controversy was $1500. It is not reasonable to suppose that Kaindl would provide $711 worth of hold up and messenger insurance for such small collections. Furthermore, it is unlikely that Kaindl would expend $1500 on surety bonds to protect moneys that were

his personal property. In light of the foregoing admitted factual account, the activity involved herein was clearly official in character. Kaindl's authority to act as successor trustee stemmed from his occupancy of the office of recorder of deeds of Cook County. The operative treatment of the fees by the recorder stamps upon them the indicia of county ownership.

The reasoning employed in the case of *Gregory* v. *Milwaukee County,* 186 Wis. 235, 201 N.W. 246, (1924) well demonstrates the logic of this result. There the county was sued to recover notarial fees during the years 1913, 1914, 1915, and 1916. These fees were the result of services rendered by the assistants and deputies in the office of the county clerk of the defendant county. The county clerk, his deputy and assistants were upon a salary basis and by statute were required to turn over to the county all official fees received by them. Plaintiffs therein urged that by virtue of their respective offices as notaries public, in taking general acknowledgments and acknowledgments for hunting licenses and marriage licenses for which they charged and received the fees prescribed by law for notaries public, that they were entitled to such fees. In passing upon that problem which presents a situation quite parallel to ours, the court said, at page 247: "The better rule in such cases is to consider all work incident to the discharge of purely official duties to be work done for the county, and not for the applicants. The time of a salaried public official consumed in work incidental to his official duties, and done during office hours, belongs to his employer and not to him, and, if a charge is made for such work, it inures to the benefit of the employer, and not to that of the public employee. Any other rule would tend to make a salaried public office a place for private gain, in addition to the salary. It was to abolish the difficulties connected with the fee system that salaries were substituted. Fees should not be allowed to creep in again, except by express legislative di-

28

rection. We therefore hold that, in the case of salaried public officials, who are required to turn in all fees of office, fees for work done during office hours, and incidentally connected with their official duties, belong to the public and not the employees, unless there is a clear valid direction to the contrary * * *." *People for use of County of LaSalle* v. *Witzeman,* 268 Ill. 508; *Mulcrevy* v. *City and County of San Francisco,* 231 U.S. 669.

The foregoing analysis leads to the conclusion that Cook County should prevail in its claim against the Kaindl estate.

The judgments of the Appellate Court for the First District and of the superior court of Cook County are each reversed and the cause is remanded to the superior court of Cook County for further proceedings in conformity with this opinion.

*Reversed and remanded, with directions.*