## Schuylkill County, Appellant, v. Reese.

*Public officers—Prothonotary—Counties with more than 150,000 population—Naturalization proceedings—Fees—Right of county to fees retained by prothonotary—Act of March 31, 1876, P. L. 13.*

The fees received in naturalization proceedings by the prothonotary of the Common Pleas Court of counties containing more than 150,000 inhabitants and retained by the prothonotary are not his private property but the property of the county and should be paid by him into the county treasury.

Mulcrevy & Fidelity & Deposit Co. v. City and County of San Francisco, 231 U. S. 669, followed.

Argued Feb. 16, 1915. Appeal, No. 2, Jan. T., 1915, by plaintiff, from judgment of C. P. Schuylkill Co., Nov. T., 1914, No. 238, for defendant on agreed statement of facts, in case of County of Schuylkill v. John W. Reese, Prothonotary. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Assumpsit for fees received by the prothonotary of the Court of Common Pleas of Schuylkill County. Before BRUMM, J.

The opinion of the Supreme Court states the facts.

The court entered judgment for defendant on an agreed statement of facts.   Plaintiff appealed.

*Error assigned* was the judgment of the court.

*Edmund D. Smith*, with him *C. A. Snyder*, County Solicitor, and *C. E. Berger*, for appellant, cited: Philadelphia v. McMichael, 208 Pa. 297; Pittsburgh v. Anderson, 194 Pa. 172; City & County of San Francisco v. Mulcrevy, 113 Pac. Repr. 339; Mulcrevy v. City & County of San Francisco, 231 U. S. 669; Barron County v. Beckwith, 124 N. W. Repr. 1030, 30 L. R. A. (N. S.) 810; People v. Seabury, 23 Howard Prac. Rep. 121; Franklin County v. Barnes, 123 Pac. Repr. 779; Finley v. Territory ex rel. Keys, 73 Pac. Repr. 273; Rhea v. Board of County Commissioners, 88 Pac. Repr. 89.

*Arthur L. Shay*, with him *M. M. Burke*, for appellee, cited: Philadelphia v. Martin, 125 Pa. 583; Inhabitants of Hampden County v. Morris, 93 N. E. Repr. 579; In re Beyer, 130 N. Y. Supp. 281; Fields v. Multnomah County, 128 Pac. Repr. 1045; Eldredge v. Salt Lake County, 106 Pac. Repr. 939.

OPINION BY MR. JUSTICE STEWART, April 26, 1915:

A marked diversity of view is to be found in the decisions of the State courts with respect to the one question here raised.   If we are correct in saying that it was one and the same question that was considered in each, however the cases may have differed in unimportant details, the final word with respect to it has been spoken by the Supreme Court of the United States in the case of Mulcrevy & Fidelity & Deposit Co. v. City & County of San Francisco, 231 U. S. 669; and any discussion of the conflicting State decisions, with a view to determine which is the better supported by reason, would be profit-

less.  The question has never before been presented to this court.

By third Sec. of the Act of Congress, June 29, 1906, c. 3592, 34 Stat. 596, jurisdiction in the naturalization of citizens was conferred upon all courts of record of any state or territory now existing, or which may hereafter be created, having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited.  By the 13th section of the act, it is provided, that the clerk of each and every court exercising jurisdiction in such cases shall charge, collect, and account for the following fees in each proceeding: for receiving and filing a declaration of intention and issuing a duplicate thereof one dollar; for making, filing and docketing the petition of an alien for admission as a citizen, and for the final hearing thereon two dollars; and for entering the final order or the issuance of the certificateship thereunder, if granted, two dollars.  This further provision follows, "The clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceedings, the remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts which they are hereby required to render the Bureau of Immigration and Naturalization."  John W. Reese, the defendant, is prothonotary of the Court of Common Pleas of Schuylkill County, a county having over 150,000 inhabitants.  Of the fees he collected in naturalization proceedings during 1913 and nine months of 1914 ending with September of the latter year, he retained a one-half amounting to $2,823.  This sum the county has demanded of him on the ground that he is a salaried officer, and under the law all fees received by him in his official capacity belong to the county.  Refusing to comply with the demand, a case stated was agreed upon to determine the ownership of the fund.  The court below held that the fees received by the of-

ficer in naturalization proceedings and retained by him belonged to him individually; and judgment was accordingly there rendered for the defendant. The county has taken this appeal, only that a determination may be reached such as will avoid future controversy over like subject matter.

Sec. 5, Art. XIV, of the Constitution of Pennsylvania reads as follows: "The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried, shall pay all fees which they may be authorized to receive into the treasury of the County or State as may be directed by law. In counties containing over 150,000 inhabitants, all county officers shall be paid by salary." The Act of March 31, 1876, P. L. 13, provides as follows: "In all counties in this Commonwealth containing over 150,000 inhabitants, all fees limited and appointed by law to be received by each and every county officer therein elected by the qualified voters of their respective counties or appointed according to law, or which they shall legally be authorized, required or entitled to charge or receive, shall belong to the county, in and for which they are severally elected or appointed; and it shall be the duty of each of said officers to exact, collect and receive all such fees to and for the use of their respective counties, except such taxes and fees as are levied for the State, which shall be to and for use of State; and none of said officers shall receive for his own use, or for any use or purpose, whatever, except for the use of the proper county or for the State as the case may be, any fees for any official services whatsoever." These two provisions, constitutional and legislative, express too clearly for refinement not only a settled policy of State, but the contract between the State and the defendant as a public officer. The latter accepted the office to which he was elected upon the terms therein prescribed. His contention is that in collecting fees in naturalization proceedings he was not acting pursuant to any law of this Commonwealth, nor dis-

charging any duty imposed by the laws of this Common-wealth, but was acting as a representative of the United States Government, deriving his power and authority from the United States, and was therefore, entitled personally to whatever compensation the United States allowed for the services rendered. The case of Mulcrevy & Fidelity & Deposit Co. v. City and County of San Francisco, supra, is directly in point, and it only remains to show how completely it governs. This much is made necessary by the argument advanced to distinguish the two cases. In the Mulcrevy case the action was brought by the city and county to recover from the county clerk money received by him in his official capacity as county clerk, in naturalization proceedings. In the court below the same defense was made as here. Judgment was rendered for the plaintiff, and on appeal to the Supreme Court of the State, the judgment was affirmed. An appeal to the United State Supreme Court was taken and like result followed there. What is now relied on to distinguish the two cases is the difference between the legislative provisions in the respective states, abridging or denying the right of salaried officials to receive and retain fees. The charter of the City of San Francisco fixes the salary of the clerk at $4,000, and thus proceeds: "The salaries provided in this charter shall be in full compensation for all services rendered, and every officer shall pay all moneys coming into his hands as such officer, no matter from whatsoever source derived or received, into the treasury of the City and County of San Francisco." It is insisted that the language here used embraces far more than does our statute above recited, in that it requires that all moneys coming into the hands of the clerk "from whatsoever source derived or received," shall be paid into the treasury of the city or county, while our statute simply appropriates to the county any fees as are limited and appointed by law to be received by the officer, and denies to the officer "any fee for any official services whatever." While the differ-

ence in language is observable, any distinction as to effect would hardly occur to a disinterested and impartial mind. These fees for services in connection with naturalization procedings, though prescribed by federal statute, and by such statute directed to be paid to a clerk of a state court, are quite as clearly limited and appointed by law to be collected by such official as any fees prescribed by State enactment; and it is impossible to see that this language excludes any fee of any kind that the official may collect or receive in his official capacity. It would, as it seems to us, be captious criticism to deny it as comprehensive meaning as that allowed the expression in the San Francisco charter, "from whatever source derived or received." Following this provision in the State Act we have this positive and express prohibition, "None of said officers shall receive for his own use, or for any other use or purpose whatever, except for the use of the proper county or for the State, as the case may be, any fees for any official services whatever." Language more comprehensive could not well be conceived. There is here an entire absence of any qualifying word, unless it be the word "official." The contention is made that the naturalization fees received by the plaintiff in error were not paid him for any official acts or service within the meaning of the statute; that the State had imposed no duties upon his office in the matter of naturalization, and that no act of his outside the duties imposed by our own State law can be regarded as official and falling within the meaning of the statute. The contention overlooks the fact that the naturalization of foreigners has been the subject of judicial cognizance in our State courts from the beginning, and that under the procedure in connection therewith, like duties and services have always been required of those holding like place with the plaintiff in error, Rump v. Com. 30 Pa. 475. But without this, it was only by virtue of his official character, and not as an individual, that he was authorized to collect and receive these fees; he is not

designated as an individual, but as an official.   Answering a like contention, in the Mulcrevy case, supra, the United States Supreme Court speaking by Mr. Justice McKENNA says, "But it is contended by the plaintiffs in error that the fees having been received officially is not of importance, that nevertheless he acted as the representative of the United States in execution of the policies of the United States, and being by the act of congress invested with his powers, he is entitled for himself to the compensation prescribed by the act for their execution without any liability to account for them to the city. The last proposition, however, does not follow from the others and the others are but confusing.   If it be granted that he was made an agent of the national government, his relations to the city were not thereby changed.   He was still its officer, receiving fees because he was, not earning them otherwise, or receiving them otherwise, but under compact with the city to pay them into the city treasury."   And again, referring to the contention made that the fees belonged to the official, the opinion proceeds: "We can not yield to the contention.   Nor do we think the act of congress compels it.   The act does not purport to deal with the relation of a State officer with the State.   To so construe it might raise serious questions of power, and such questions are always to be avoided.   We do not have to go to such lengths.   The act is entirely satisfied without putting the officers of a state in antagonism to the laws of the state—the laws of which give them their official status.   It is easily construed and its purpose entirely accomplished by requiring an accounting of one-half of the fees to the United States, leaving the other half to whatever disposition may be provided by the state law."

We have attempted nothing more than to show the parallel between the two cases, and that the statute of this State bearing on the particular subject we have been considering is no less restrictive than the charter of San Francisco, under the terms of which the Cali-

fornia case was decided. We have cited the latter case as supporting two propositions; first, that the clerks of state courts are not officials of the United States, but of- ficials in the states in which they exercise their office; and second, that under the act of congress conferring the right upon the clerks of states to retain one-half the prescribed fees they collect in naturalization proceed- ings, it is competent for the several states to require of such officials that they pay over the amount retained for the use of the state or county as the case may be. That this State has so done both in its constitution and legisla- tive enactments we think admits of no question. The as- signments of error are therefore sustained; the judg- ment is reversed, and judgment is now entered for the plaintiff in the sum of twenty-eight hundred and thirty- three dollars, and costs.