## Indiana County v. Long

*William E. Pierce* and *Peelor & Feit*, for plaintiff.
*James W. Mack*, for defendant.

CREPS, P. J., August 12, 1940.—This is a case stated for the judgment of the court, upon agreed facts of which the following is a brief statement:

Defendant became Prothonotary and Clerk of the Courts of Quarter Sessions and Oyer and Terminer of Indiana County, Pa., on January 4, 1932, in which capacity he was acting at the institution of this proceeding, his term of office, however, having since expired on the first Monday of January 1940. His salary for the various offices, as fixed by section 1 of the Act of June 29, 1923, P. L. 944, as amended by the Act of June 12, 1931, P. L. 560, 16 PS §2431, was $4,000 per year. During his incumbency he collected naturalization fees from applicants for citizenship in the United States, at the rates fixed by Federal statutes, paying over to the Bureau of Naturalization one half thereof as required, the remaining one half ($1,492.50) for the years 1932 to 1937, inclusive, being retained by defendant personally. A question having arisen as to whether the fees belonged to him individually or to the county, defendant paid over to Indiana County the one-half part ($987.50) of those collected for the years 1938 and 1939, without prejudice, however, to his right to recover them if it was determined that such fees belonged individually to him. It is further agreed that, from the time jurisdiction in naturalization matters was lodged in the local court by the Federal Naturalization Law of June 29, 1906, 34 Stat. at L. 596, 8 U.S.C. §357, up to December 31, 1937, it was not the practice of the several clerks of courts of Indiana County (more aptly, in this connection, prothonotaries) to turn over to Indiana County any part of the fees from naturalization matters, but such fees were retained by them for their own use; but it should be kept in mind that until the passage of the Act of 1923, supra, the office involved was strictly a fee office.

The legal question presented for the court's determination may thus be stated to be: Was defendant entitled to retain said naturalization fees for his own use, or should

they have been treated as belonging to Indiana County and turned over to the county?

The Federal Naturalization Act of 1906, supra, provides, inter alia, in section 3:

"That exclusive jurisdiction to naturalize aliens as citizens of the United States is hereby conferred upon the following specified courts . . . also all courts of record in any State or Territory . . . having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited."

The act, after fixing the fees to be charged in each naturalization proceeding, makes the following provision in section 13 (8 U.S.C. §402):

"The clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceeding; the remaining one-half of the naturalization fees in each case collected by such clerks, respectively, shall be accounted for in their quarterly accounts, which they are hereby required to render the Bureau of naturalization . . ."

The general subject here in question has been given some consideration by the Supreme Court of the United States in the case of Mulcrevy et al. v. City & County of San Francisco, 231 U. S. 669. It has been cited in the briefs of counsel on both sides of this controversy and was discussed at length on oral argument. However, we believe it may be stated as the conviction of all here concerned that it is not decisive of the ultimate question to be decided in this proceeding. A careful analysis of the Mulcrevy case will disclose the fact that its effect is merely to hold that there is nothing in the Act of 1906, supra, determinative of the question whether a clerk of a court which exercises jurisdiction in naturalization matters may retain as his own the fees remaining after accounting for one half thereof to the Bureau of Naturalization. Brief quotations from the opinion make this point clear (pp. 673, 674):

"On the merits the case presents no difficulty. It involves only the construction of the act of Congress already referred to above. . . . The act does not purport to deal with the relations of a state officer with the State. To so construe it might raise serious questions of power, and such questions are always to be avoided. We do not have to go to such lengths. The act is entirely satisfied without putting the officers of a State in antagonism to the laws of the State—the laws which give them their official status. It is easily construed and its purpose entirely accomplished by requiring an accounting of one half of the fees to the United States, *leaving the other half to whatever disposition may be provided by the state law.*" (Italics supplied.)

Having observed, therefore, that the Mulcrevy case is decisive only to the extent of laying down the rule that the naturalization fees remaining after accounting to the United States for its share are subject to "whatever disposition may be provided by the State law", consideration must be given to the law of Pennsylvania for a solution of the problem.

The precise question has not been passed upon by either of the appellate courts of our State and it is believed there has been no decision by a lower court; at least, none has been found by counsel or the court. That there is no uniformity in the disposition of naturalization fees in counties of the sixth class (the class to which Indiana County belongs) is evidenced by data gathered by counsel for plaintiff. Inquiries directed to 16 sixth-class counties produced the following information: Excluding one where naturalization matters are not handled and three which made no report, in eight of the remaining 12 the practice has been that such fees are paid to the county, whilst in four they are retained by the prothonotary for his own use.

Article XIV, sec. 5, of the Constitution of Pennsylvania provides:

"The compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive, into the treasury of the county or State, as may be directed by law. In counties containing over one hundred and fifty thousand inhabitants all county officers shall be paid by salary . . ."

In section 6 of the Act of 1923, supra, the act making the office of prothonotary and clerk of courts a salaried one, it is provided:

"The salaries fixed and provided for by this act shall be in lieu of all moneys, fees, perquisites, mileage, expenses, and other allowances which are now or may hereafter be received or allowed to such officers, except such · fees as may be received by them when acting as agents of the Commonwealth. All such moneys, fees, mileage, or perquisites shall be received and collected by such officers, shall belong to the county, and shall be paid into the county treasury, and all said officers shall be entitled to receive from the county all necessary traveling expenses incurred in the administration of their office."

Upon the question of the application of the constitutional and statutory provisions above quoted to the present case, counsel for defendant takes the position, as evidenced by the statement in his brief, that "there is no law in Pennsylvania, so far as we have been able to discover, directing the clerk of courts to pay naturalization fees to the treasury of the county, and we submit such a law is necessary to carry out this provision of the Constitution of Pennsylvania", asserting that section 6 of the Act of 1923, supra, cannot be considered a direction by law applicable to the officer involved; on the other hand, counsel for plaintiff contend, as set forth in their brief, that "under the provisions of section 6 of the Act of 1923, supra, and the provisions of section 5 of article XIV of the Constitution of Pennsylvania, such fees belong to the county and not to the prothonotary personally".

We believe the case of Schuylkill County v. Reese, 249 Pa. 281, if not held of controlling effect, must of necessity be considered as bearing very directly upon the matter to be here determined. That case involved the right of the prothonotary in a county having a population of over 150,-000 inhabitants to retain for his own use naturalization fees collected by him. It will be recalled that the latter portion of section 5, art. XIV, of the Constitution of Pennsylvania, supra, provides that, in counties containing over 150,000 inhabitants, "all county officers shall be paid by salary . . ." In keeping with the earlier provisions of said section that salaried officers shall pay all fees into the treasury of the "county or State, as may be directed by law", the Act of March 31, 1876, P. L. 13, was passed, sections 1 and 15 of which act (16 PS §2231 and §2240) required the payment to the county of all moneys, fees, perquisites, or mileage, collected by such salaried officers (except items collected for the State). We here point out the marked similarity in the language used in section 15 of the Act of 1876, supra, to that in section 6 of the Act of 1923, supra. The Supreme Court, in its opinion in said case of Schuylkill County v. Reese, supra, holding that naturalization fees were payable into the county treasury, said, inter alia (p. 284) :

"His [meaning prothonotary's] contention is that in collecting fees in naturalization proceedings he was not acting pursuant to any law of this Commonwealth, nor discharging any duty imposed by the laws of this Commonwealth, but was acting as a representative of the United States Government, deriving his power and authority from the United States, and was therefore, entitled personally to whatever compensation the United States allowed for the services rendered."

Citing the case of Mulcrevy et al. v. City & County of San Francisco, supra, as completely negativing that contention, the Supreme Court continued (p. 286) :

"The contention is made that the naturalization fees received by the plaintiff in error were not paid him for any official acts or service within the meaning of the statute; that the State had imposed no duties upon his office in the matter of naturalization, and that no act of his outside the duties imposed by our own State law can be regarded as official and falling within the meaning of the statute. This contention overlooks the fact that the naturalization of foreigners has been the subject of judicial cognizance in our State courts from the beginning, and that under the procedure in connection therewith, like duties and services have always been required of those holding like place with the plaintiff in error, Rump v. Com. 30 Pa. 475. But without this, *it was only by virtue of his official character, and not as an individual, that he was authorized to collect and receive these fees: he is not designated as an individual, but as an official*". (Italics supplied.)

In connection with the thought just expressed in the above quotation concerning the character of acts performed by a prothonotary in naturalization, we believe the very wording of the Federal Act of 1906, supra, is rather decisive of the question. It will be observed that jurisdiction is conferred upon "all *courts* of record . . . having a seal, a clerk," and in outlining the duties to be performed by the clerk he is identified as (section 12, 8 U.S.C. §400) "the *clerk* of each and every *court* exercising jurisdiction in naturalization matters." (Italics supplied.) The emphasis is required to be placed upon the "court" as being the institution upon which jurisdiction is conferred and the "clerk" acquires his authority by virtue of his official connection with that court, and not in any sense as an individual disassociated therefrom.

The case of County Auditors of McKean County v. Anderson, 133 Pa. Superior Ct. 475, sheds further light upon

the problem presented in this case. That case involved the right of the recorder of deeds in a sixth-class county (same class as here) to retain for his own use fees collected by him for the preparation of abstracts of title. Consideration was given to section 5, art. XIV, of the Constitution, the Act of 1876, and the Act of 1923 (including section 6 thereof), all of which we have heretofore quoted as bearing upon the present controversy. In that case, it was held that the fees for such abstracts were not payable to the county, but were rightfully retained by the recorder of deeds personally, on the theory that the making thereof by the recorder was not an "official act", the court observing that "service not required by the law cannot be classed as official duties". The opinion concluded with these words (p. 481):

"The court below held that the service performed in the preparation of abstracts was not a legal requirement of the office, and the moneys resulting therefrom were not official income within the meaning of the Act of 1923, P. L. 944, and the county was therefore not entitled thereto. We see no error in this conclusion."

Again, in the case of York County v. Fry, 290 Pa. 310, the Supreme Court, in passing upon the question of the right of a county treasurer to certain fees, used this language (p. 314):

"In the cases above cited where the county official was allowed to retain the fees, etc., he had been expressly designated as agent for the Commonwealth, and the theory upon which those cases rest, is that the fees, etc., which the officer is permitted to retain are received by him for services as agent for the Commonwealth and not in his official capacity as a county officer. Nevertheless, *the general rule is that salaried officers can appropriate to their own use no fees for the performance of any duty cast upon them by law:* Schuylkill Co. v. Pepper, 182 Pa. 13; Phila. v. McMichael, 208 Pa. 297; Schuylkill Co. v.

Reese, 249 Pa. 281; Mulcrevy v. San Francisco, 231 U. S. 669." (Italics supplied.)

Having thus given consideration to the constitutional and statutory provisions admittedly involved in the issue here presented, as well as such decisional law as we believe has a direct bearing thereon, it remains to apply the principles to the facts before us. In the light of what has been said, it must be taken as established that defendant prothonotary acted in an "official" capacity in naturalization matters, performing "duties cast upon him by law", and it was in that capacity that the fees were collected. By reason of the Act of 1923, supra, defendant was a "salaried" officer. We are satisfied that the provisions of section 5, art. XIV, of the Constitution, supra, without more or added legislation, prohibit such salaried officer from appropriating to his own use any fee which he was by law authorized to receive, the language used being that "all county officers who are or may be salaried shall pay all fees which they may be authorized to receive, into the treasury of the county or State, as may be directed by law." The constitutional provision *itself withholds* such fees from the officer in his personal capacity and no further direction by law is required to do so. It will be observed the direction is that the fees be paid "into the treasury of the county or State, *as may be directed by law*". The phrase "as may be directed by law" refers to legislative enactment allocating such fees as between the county and State. To put it another way, the Constitution provides against a salaried officer keeping the fees, but leaves to the legislature the power to determine whether they shall be paid to the county or the State. When, therefore, the office in question was put on a salary basis, it was required that legislation be passed fixing the recipient of the fees of such office. The Act of 1923, supra, must be taken to be the legal direction so contemplated, and it requires the fees to be paid to the treasury of the county. All will admit that the effect of the Act of

1923 was and is to require a prothonotary to account to the county for fees collected in divorce actions, suits in assumpsit, suits in trespass, and in all similar matters as to which a prothonotary acts in an "official" capacity, performing "duties cast upon him by law". We are convinced naturalization fees are in no different class from those mentioned and that they are similarly controlled by said enactment.

Defendant's counsel argues that, by reason of the custom of retaining naturalization fees by prothonotaries in Indiana County, defendant should be relieved from paying over the fees here involved. As heretofore indicated, such custom, if it could be considered controlling in any sense, would have to be held as prevailing only since 1923, for the reason that up to that time there was no question about the right to so retain them, the office being on a fee basis. However, the case of Lackawanna County's Appeals, 296 Pa. 271, is decisive of the contention. In discussing an alleged custom, similar to that here argued, the Supreme Court said (p. 278) :

"It should not be necessary to repeat that all such arguments must be unavailing in a court of justice, which will never permit a public official to take and keep the funds committed to his care, if there is any legal way to prevent it."

However, we take this opportunity to publicly say that, based upon our knowledge of defendant, his retention of the fees must be taken to have been in reliance upon the established custom and his belief that he was legally entitled to the fees. When the question of his right to such fees was brought to his attention, he paid over the fees accruing thereafter. The extraordinarily splendid reputation defendant bears for honesty and integrity is the complete answer to any implication of improper motives.

### Order and decree

And now, August 12, 1940, upon due consideration, the court being of the opinion for the reasons herein-

before expressed that under the law W. Earl Long should have paid to the County of Indiana the fees retained by him from naturalization matters for the years 1932 to 1937, inclusive, in keeping with the terms of the stipulation in the foregoing case stated, it is ordered, adjudged, and decreed that judgment be, and it is hereby, entered in favor of plaintiff, the County of Indiana, and against defendant, W. Earl Long, in the amount of the sum involved, to wit, $1,492.50.